ROBERT HAIRSTON et al., Plaintiffs in Error, *v.* RUTH T. HAIRSTON et al., Defendants in Error.

1. WILL: REVOCATION.—An act of cancellation, or obliteration, is equivocal in itself, and not conclusive, but only *prima facie* evidence of an intention to revoke ; and when such act is associated with another, upon which it is dependent, and which fails of effect, the *prima facie* presumption of the intent to revoke is rebutted, and the obliteration or cancellation will not have that effect ; but it is otherwise, in case of a will duly executed, containing an express clause of revocation, but which fails to take effect, as to a disposition of the estate therein attempted to be made.

2. SAME : DEPENDENT RELATIVE REVOCATION.—The doctrine of dependent relative revocations, in which the act of cancelling, obliterating, &c., being done with reference to what is intended to be an effectual disposition of the estate, will be a revocation or not, according as the relative act is efficacious or not, has no application to a case in which the intent to revoke is contained in a will or declaration in writing, duly executed ; hence, if a will containing a clause of revocation, be wholly inoperative as to the disposition of the estate attempted to be made, because the devisee is incapable of taking, yet it will be good and valid as a revocation of a former will.

3. SAME : MAY BE VOID AS A DEVISE, BUT GOOD AS A REVOCATION.—A will made in favor of a slave, is void, so far as a disposition of the estate is attempted to be made ; but if duly executed, and containing a clause of revocation of a former testament, it will be operative to that extent.

4. MISTAKE : OF LAW, NO GROUND TO SET ASIDE WILL.—A misapprehension on the part of the testator, as to the legal capacity of a devisee to take, is a mistake of law, and not of fact, and will not affect a clause of revocation contained in the will.

5. VERDICT : WHAT RESPONSIVE TO ISSUE.—A verdict, "that R. H. was of sound and disposing mind at the time of the making of his will, and that the same was executed and attested according to law," is substantially responsive to the following issues. First : "Whether the said R. H. was of sound and disposing memory at the time of the execution of the will ?" Second : "Whether the writing, purporting to be the last will and testament of said R. H., be his last will and testament, or not ?"

6. FRAUD : UNDER WHAT ISSUE TRIABLE.—The question of fraud, in procuring the execution of a will, may, with propriety, be inquired into, under the issue, "Whether the instrument purporting to be the last will and testament of a testator, be such last will and testament, or not ?"

7. ISSUE TO CIRCUIT COURT.—The issues in relation to the validity of a will certified to the Circuit Court, to be tried by a jury, should be based upon the alle-

Hairston et al. *v.* Hairston et al.

gations in the pleadings, and no issue should be so made up and certified, unless the fact therein submitted for trial, be alleged in the bill.

In error from the Probate Court of Lowndes county. Hon. Nathaniel E. Goodwin, judge.

On the 22nd day of September, 1841, Robert Hairston, the decedent, made and executed his holographic will, in the county of Lowndes, in this state, whereby he devised and bequeathed most of his estate to plaintiffs. This will was executed in duplicate, and a copy sent to each of two brothers, sealed up, with directions that they should not be opened until after his death. On the 6th of March, 1852, he made another will, in which he gave most of his property to a slave Chrimhiel. This contained no clause of revocation. On the 7th of March, 1852, he made the will copied in the opinion of the court, and died in a few hours afterwards. On the 7th of April, 1852, the will of the 7th of March, 1852, was admitted to probate in common form, in the Probate Court of Lowndes county, so far as the clause of revocation was concerned, and it was declared to be a good and valid revocation of the two former wills.

In September, 1852, the plaintiffs in error, who were the beneficiaries under the will of 1841, filed their bill in said court against the heirs-at-law of Robert Hairston and his administrator, seeking to have the probate of said will set aside, and the will of 1841 established as the last will and testament of said Robert Hairston. The defendants answered. The allegations of the bill and answer are sufficiently set forth in the opinion of the court.

The bill asked that the following issues be made up and certified to the Circuit Court of Lowndes county, to be tried by a jury.

1. Whether the writing produced, and admitted to probate and record, be the last will and testament of said Robert Hairston, or not?

2. Whether the said testator, at the time of making said instrument, on the 7th of March, A. D. 1852, was of sound and disposing mind?

3. Whether the said testator, at the time of making said instru-

ment, on the 7th of March, 1852, was of mind sound and disposing enough to remember and comprehend the amount and value of his estate—where situated—the amount of his debts and liabilities— the number of his near relations—brothers, sisters, nephews, nieces, and their relative claims upon his bounty, so as to dispose of his estate with reflection, reason, and judgment?

4. Whether the said instrument, executed on the 7th of March, A. D. 1852, was executed under the mistaken belief, that the said negro child slave, mentioned therein as the devisee, was capable in law, of taking the estate therein devised?

5. Whether the said instrument of the 7th of March, 1852, was intended by the said testator to revoke all other wills, at all events, or only to give effect to the disposition of his estate to said negro child slave, the devisee mentioned therein, in the event she was adjudged capable in law of taking as devisee?

6. Whether the said will was procured or executed by fraud, under influence, misrepresentation, or misunderstanding, of either law or fact, influencing said testator thereto?

The court refused to order the issues made up as prayed for, but ordered the following:—

1. Whether Robert Hairston, late of said county, deceased, on the 7th day of March, 1852, at the time of the execution of the will of that date, mentioned in said bill, was of sound and disposing mind?

2. Whether the said paper writing, purporting to be the last will and testament of said Robert Hairston, deceased, be the last will and testament, or not?

And the same issues were ordered in relation to the wills of the 22nd September, 1841, and 6th of March, 1852.

Upon the trial in the Circuit Court, the jury returned the following verdict: "We, the jury, find that the testator was of sound and disposing mind at the time of making and executing the will of 1841; and also find him to be of sound and disposing mind, at the time of making and executing the wills of the 6th and 7th of March, 1852; and that said wills are executed and attested according to law."

This verdict was certified to the Probate Court of Lowndes

county; whereupon plaintiffs in error moved the court for a new trial; first, because the verdict is not responsive to the issues; and second, because it does not find the second issue at all, but wholly omits to do so. This motion was overruled by the Probate Court, and plaintiffs in error excepted.

The plaintiffs in error then moved the court to certify said second issue back to the Circuit Court, to be tried by a jury; which motion was also overruled by the court, and plaintiffs in error excepted.

The plaintiffs in error also moved the court to certify and send to said Circuit Court the following issues, to be tried, &c.

1. Whether the said will of the 7th of March, 1852, revoked, or was intended to revoke all former wills, "*revocavit vel non?*"

2. Whether the wills of the 6th and 7th of March, 1852, or either of them, were executed under a mistake of either law or fact, or both?

And in support of said motion, they offered to prove by Thomas B. Brooks, that about two hours after the will of the 6th of March was executed, he had a conversation with the said testator upon the subject of the will, and told said testator that the said slave Chrimhiel, the devisee therein, could not be emancipated in the manner attempted in said will, under the laws of Mississippi, and the said testator replied to him, "Why, Major George says it can be done." And they also offered to prove by Edward Brown, that said testator labored under a mistake, both of law and fact, in relation to his power to devise his estate to said slave, as to his power to set her free, and as to the authority of the Probate Court to sanction and validate the devise to said slave, by the appointment of a trustee. They also offered to prove to the court, that the clause of revocation contained in said will of the 7th of March, 1852, was only intended by the testator to take effect and operate as a revocation of his former wills, in the event that the said devise to said slave Chrimhiel, should be valid and effectual in law. All of which evidence the court refused to hear, and overruled said motion; whereupon plaintiffs in error excepted.

The court thereupon declared its satisfaction with the verdict of the jury, and being of opinion that the will of the 7th of March

was a good revocation of former wills, confirmed the probate of it, and dismissed the bill. From which judgment this writ of error was prosecuted.

*J. T. Harrison,* for plaintiffs in error.

This cause comes up from the Probate Court of the county of Lowndes.

On the 7th day of April, 1852, three testamentary papers, purporting to be wills and testaments of Robert Hairston, late of said county, deceased, were filed in said Probate Court, by some one whose name is not disclosed anywhere in the record, and the execution of all of them was proved in common form. They were of the following dates, viz: 22nd September, 1841; 6th March, 1852; and 7th March, 1852. And it was decreed that the last one should be admitted to probate, as the last will and testament of the deceased, "*so far as the same relates to the revocation of all former wills.*"

In September, 1852, the plaintiffs filed their bill in said Probate Court, claiming under the will of 1841, and contesting the will of the 7th of March, 1852. *Six* issues were presented, and prayed to be certified to the Circuit Court, to be tried by a jury. The three first looked to the execution and due attestation of the will and the sanity of the testator; the others were intended and proposed, to raise the several issues of *revocavit vel non;* mistake as to law and facts; and undue influence. After the answers came in, the court disregarded the issues proposed and made by the bill, and assumed the power of dispensing with them, and of narrowing down the proceedings to two issues of its own, viz:—

1. Whether Robert Hairston, late of said county, deceased, on the 7th day of March, 1852, at the time of the execution of the will of that date, was of sound and disposing mind?

2. Whether said paper writing, purporting to be the last will and testament of said Robert Hairston, deceased, be the last will and testament of said Robert Hairston, or not?

The court refused to let the questions of *revocavit vel non,* of mistake, and of fraud, go to the jury. This is the first error complained of, and we contend that such action amounted to usurpa-

tion of authority, and was the exercise of an arbitrary and illegal discretion.

*Revocavit vel non* is similar to a question of *devisavit vel non*, and is a question of consideration *for the jury.* 1 Lom. Ex'ors, 42; 2 Yeates, 170; 2 Dal. 266; *Bates* v. *Holeman,* 3 Hen. & Munf. 526, 530; *Pringle* v. *McPherson,* 2 Brev. 286; *Tickner* v. *Tickner,* 3 Wilson, 508; 3 Curt. 636; 11 Wend. 236; 4 How. (Miss.) R. 477, 478; Jarm. Pow. Devises, 595; 5 Law Lib. (new series,) 348; Hutch. 651, 652.

The *animus revocandi* is a question of fact, which the *jury alone* should decide. *Pringle* v. *McPherson,* 2 Brev. 286.

And the question of *fraud* may properly arise. *Ford* v. *Gardner,* 1 Hen. & Munf. 72; 1 Lom. Ex'ors, 100; 7 How. 143; 1 S. & M. Ch. R. 589.

A revocation is inoperative, which has been induced by duress or fraud. *O'Neall* v. *Farr,* 1 Rich. 80; *Laughton* v. *Atkins,* 1 Pick. 535.

That the other issue as to a *mistake,* &c., was a proper one, we will show hereafter.

And under the two issues sent by the judge of Probate into the Circuit Court, the questions of *revocavit vel non,* mistake, &c., were excluded, and the Circuit Court judge instructed the jury not to consider of them.

The verdict was as follows, viz:

" We the jury, find that the testator was of sound and disposing mind at the time of making and executing the will of 1841; and also we find him to be of sound and disposing mind at the time of making and executing the wills of the 6th and 7th of March, 1852, and that said wills are executed and attested according to law."

The jury do not respond to the second issue at all. And their verdict is a special one. They do not find the issues for or against either party.

And they were not sworn to try the issues.

The verdict must comprehend the whole issue, or issues submitted to the jury. 4 Humph. 345; 6 Ib. 45; 7 Halst. 752; 6 Mass. 1; 1 Miss. 401; 4 Hayw. 255; 1 Stewart, 36: 5 Ham. 259.

The objection was taken, but was overruled.

A motion was made, besides, to have the second issue sent back, which was refused.

The complainants next moved to have two more issues certified and sent to the Circuit Court, the same in substance, as those originally proposed in the bill and disregarded by the court, in order that a *jury* should pass upon the issues of *revocavit vel non*, mistake, &c. Evidence was offered to be adduced to prove the issues, but the court refused to hear the evidence, or certify the issues.

And upon the *hearing* of the bill, the court usurped the power to try the questions of *revocavit vel non*, &c., and not only so, but *refused to hear the evidence* offered to be adduced to support them.

The points were made by the bill.

The decree, as might be supposed, is a very remarkable one. It merely expresses "*satisfaction*" with the verdict, and then goes on to declare that the court being "of *opinion* that the will of Robert Hairston, deceased, dated the 7th day of March, 1852, and *heretofore admitted* to probate in this court, is *a full and complete revocation* of all other wills, and the court doth confirm the probate of said will, and *dismiss the bill*," &c.

The decree was not founded on the verdict of the jury; it does not pursue it, nor was any judgment rendered on the verdict. The court *dismissed* the bill, which carried answers and every thing out of court with it. If the bill was dismissed, by what authority did the court render a decree of "a full and complete revocation," &c?

Here is the will:—

"This being my last will and testament, which revokes all other wills and testaments by me made:"—

1st Item. I will my body, &c., &c.

2d Item. I will Chrimhiel be made free, according to the laws of the state of Mississippi.

3d Item. It is my will, that the said Chrimhiel possess all my estate, both real and personal, to me belonging.

In witness, &c.

Hairston et al. *v.* Hairston et al.

This testamentary paper is invalid to pass anything, and is inoperative upon its face. The entire devises are void and of no legal force and effect ; they are not to a *person*, but to a *thing*, property is devised to property—one chattel is given to another ; yet, the court below decided that, wholly nugatory as a will, still it had power to produce the extraordinary result of causing a testator to *die intestate*, in opposition to his own written testament. It was decided that the testamentary paper could not accomplish what the testator *did intend*, but that it could accomplish what he *did not intend*. It must be conceded, that the intention of the testator is the law of devises, yet, when, as in the present case, a continuous intention of more than ten years is manifested in three different wills, not to die intestate, but to dispose of his entire estate from the heirs at law, a rule of construction is applied, which gives to them the whole property, contrary to the *intention* of the testator, and that too, by the very instrument which was *intended* to prevent such a result. A rule of law that would make a testator die intestate by last will and testament, and in the face of a manifest intention to dispose of his entire estate ; that lays aside the whole body and substance of an instrument, and holds on to the preamble and mere formal part, when they constitute a part and parcel of one, and the same testamentary act; and that causes one single act, because it *fails* to effect what *was intended* to bring about what *was not intended*, ought to have clear and satisfactory reasons to support it, and a broad and sure foundation to stand upon.

The testator manifests an intention not to die intestate, and he employs means, that he supposes effectual, to effect his purpose ; he is mistaken as to the means employed, and because he is mistaken, you not only refuse to carry out his published intention, but render the very same means operative to produce a result *directly opposite*.

Judge Baldwin, in delivering the opinion of the court in *Barksdale* v. *Barksdale*, 12 Leigh. 541, uses this language :

" In every testamentary revocation, the testator always acts upon the supposition that his whole purpose will be accomplished ; that his entire testamentary act will be effectual, as well in regard

to the new disposition of the subject, as the revocation of that which he had made by his former instrument; and his revocation is, in fact, *part and parcel of his testamentary action.* That the testator ever should proceed upon the hypothesis of the invalidity of the instrument which he employs to effectuate his object, is beyond my conception; nor can I conceive, where he makes a new disposition of his property, and *eodem flatu,* a revocation of a former disposition of it, how he can do so with any other expectation than that *both will share the same fate.* It seems to me necessarily to follow, that the invalidity of the instrument, which defeats the new disposition of the property, must also defeat the revocation of the former instrument."

" How can we know that the testator contemplated the revocation as effectual, though the testament itself should not be accomplished? How could such an expectation exist, without a probability in his mind, that his testament would prove abortive? And who ever made his last will and testament under the influence of such belief?" p. 542.

" In a case like this, no argument to prove the revocation substantive and independent, can, to my apprehension, avail anything, unless it goes the length of proving that the testator intended to die intestate, which is impossible here, it being directly in the teeth of the testamentary provisions of the instrument," p. 542.

" Besides, no man, I should think, ever made provision by last will and testament for dying intestate," p. 543.

*An express revocation* of all former wills, though not wanting in any circumstance for a revocation, will not operate as such, if it was only subservient to another disposition which fails. This rests upon the same principle with the doctrine of *cancellation,* dependent on the efficacy of another act. 1 Lomax on Ex'ors, 54; 1 Will. on Ex'ors, 72, &c.

" Cancellation, whether under the influence of mistake in point of law, or under a mistake of fact, seems equally inoperative to revoke a will; ' If a man,' says Lord Ellenborough, ' cancel his will under a mistake in point of fact, that he has completed another, when he really has not, as was the case in *Hyde* v. *Hyde,* the cancellation is void; and if he cancel it under a mistake in law,

that a second will (complete as to its execution,) operates upon the property contained in the first, when from some clerical rule, it really does not, shall this be deemed a cancellation?'" 1 Lomax on Ex'ors, 44; 1 Will. on Ex'ors, 72, 91; *Perrott* v. *Perrott*, 14 East, 440; 3 Ves. 321, 322; 1 Pr. Will. 345; 2 Vern. 741; 2 Dev. & Bat. 316, 317, 318.

A cancellation of a will under an erroneous assumption of facts, may not operate as a revocation. Upon the same principle, if a man by a subsequent will or codicil, makes a disposition different from a former one, under a false impression, the impulse of which is the foundation of his wish to change his former intent, such an act will be considered only as affecting a *contingent presumptive revocation*, depending on the existence or non-existence of the fact. 1 Lomax on Ex'ors, 51; 1 Williams on Ex'ors, 93, 72; Jarman, Powell on Dev. 523, 524.

This principle, that the effect of the obliteration, cancelling, &c., depends on the *quo animo*, being pursued to its consequences, has introduced the doctrine of *dependent relative revocations ;* in which the act of cancelling, &c., being done with reference to another act, *meant to be an effectual disposition*, will be a revocation or not, according as the relative act is efficacious or not. 1 Lomax on Ex'ors, 42, 43, 44; 1 Williams on Ex'ors, 67, 68; 1 Jarman, Powell on Dev. 600.

In 2 Hare and Wallace, Leading Cases, 648, 649, the law is stated thus:—

"It has already been stated, that the cancellation or destruction of a will, amounts to nothing more than *primâ facie* evidence of an intent to revoke it, which may be rebutted by other evidence, showing that no such intention existed, or that it applied to something else, and not to the instrument actually destroyed or cancelled. But even where there can be no doubt either of the revoking intention, or as to its application, it will fail of all actual effect, if it appear to have been founded on a misapprehension of existing circumstances, or to have been a mere means or incident to the accomplishment of some further design, which in point of fact has not been accomplished. Thus it has been decided on several occasions, both in the English Ecclesiastical Courts, and the

Court of Chancery, that an *express or implied* revocation will be wholly inoperative, where it has proceeded upon a mistaken impression, as to the death of a prior legatee, or the loss of a former will.  *Campbell* v. *French*, 3 Ves. 321 ; 1 Haggard, Eccles. Rep. 378, and *Doe* v. *Evans*, 10 A. & E.  It was decided in *Doe* v. *Evans*, that as the codicil was founded on a false impression, on a point more material than any other, it must fail of effect as a revocation, and of necessity as a devise.  Nor is it essential, that the mistaken impression on which it proceeds, should relate to some *external matter*.  The result may be the same, where it is confined to the operation of the instrument which expresses a revoking intention.  *Eccleston* v. *Speeke*, Carth. 79.  Thus, it was held in *Onions* v. *Tyrer*, that a testamentary writing which contained a revoking clause, and was sufficiently executed under the Statute of Frauds, as a revocation, but not as a will, had failed of effect altogether, in failing as a devise."  2 Hare and Wallace, Leading Cases, 649.  "A testator who revokes one devise by another, will be supposed to have made the purpose of revocation *subsidiary* to that of devising, unless there is some reason for inferring a primary purpose of revocation.  The law was so held in *Barksdale* v. *Barksdale*, 12 Leigh. 535.  And in *Laughton* v. *Atkins*, 1 Pick. 355, where a devising and revoking intention were expressed in the same instrument, it was decided that both were so *inseparably connected*, that a decree of the Court of Probate against the admission of the instrument as a will, was conclusive against its validity as a common law revocation."  2 Hare and Wallace, Leading Cases, 649.

In *Laughton* v. *Atkins*, 1 Pick. R. 546, it is said :  " If the principles deduced from the cases cited be true, that all we can see of a design to revoke is indicative of a purpose to substitute this for the one revoked, then to give effect to the revocation, and to deny any effect to the dispositions of the will, would be to thwart the intentions of the testator."

How can we know from the will itself, that he would not have preferred that the first will should stand, rather than that his heirs at law should enjoy the estate.  It is obvious that he meant no good to them in either of the wills, p. 546.

In the case of *Pringle* v. *M'Pherson*, 2 Brevard, 279, this principle was settled: "If a former will be cancelled under the presumption that a latter will is good, which proves void, the first will shall not be revoked; and if the devisee under the latter will, is not legally entitled to take, the devisee under the first will, intended to be revoked by the second, shall not lose."

The court say:—"Where the second devisee takes nothing, the first shall lose nothing," p. 286, &c.

In the case before the court, not only was the right of trial by jury denied us upon the subject, but the court below refused to hear any evidence as to the *quo animo* of the testator, as to mistake of law or of fact, and as to question of a dependent relative revocation.

Judge Lomax, in his Treatise on Executors, after stating the law, as already quoted, adds: "A will duly executed according to the statute, though prevented from taking effect, in consequence of some matter *dehors* the will, as the incapacity of the person to whom the disposition is made to take, is, *it seems*, by the decisions under the English statute, a revocation of a former will." 1 Lomax on Ex'rs, 52.

But in a note he says, compare this with the *principle* of the cases of *Eccleston* v. *Speeke*, 3 Mod. 258; *Onions* v. *Tyrer*, 1 Pr. Wil. 343; *Ex parte Ilchester*, 7 Ves. 374; Ib. 52, note.

And we would add, compare it with the cases of *Barksdale* v. *Barksdale; Laughton* v. *Atkins*, and *Pringle* v. *M'Pherson*, and the note in Hare and Wallace's Cases:—

In Hilliard's Abridgment of the American Law of Real Property, it is said in relation to these old English cases:—

"But a subsequent devise *may* operate by way of revocation, *if obviously so intended*, even though, from some *extrinsic* cause, it does not take effect as a devise: as where it is made to a Roman Catholic, &c." 2 Hilliard, Ab. 493, § 6.

And Jarman, in his edition of Powell on Devises, is still more explicit, and says, in a note: "Perhaps the cases in which a *revoking clause* and (as we shall presently see,) an *act of cancelling*, have been held to be inoperative, because associated with an ineffectual attempt to devise, may, in the minds of some persons,

create a doubt whether the *old cases and dicta* in favor of the re-
voking operation of a devise which fails from the incapacity of the
devisee to take, *would now be followed.*" 1 Jarm. Powell on Dev.
593, 594, note ; 5 Law Lib. (New series,) Powell on Dev. 347, note.

Certainly, this court is not bound to follow these " old cases and
dicta," and decisions under the English *statute.* It is not a com-
mon law principle. And it is not *lex scripta est,* or *stare decisis*
in this country, and I know of no modern English case settling the
principle. In America, I apprehend that it will be very difficult
to produce any case where the principle has been affirmed or the
doctrine maintained. The text writers merely quote the cases, and
are far from approving them.

It was formerly held, in the same class of cases, that inopera-
tive conveyances which have failed for want of completion, and
wills not executed according to the. statute, would amount to a re-
vocation. But now it is admitted law, that an instrument intended
for a will, but defective in its execution, is no revocation of a prior
will, though containing an express clause of revocation. 12 Leigh.
541 ; 14 Mass. 208, 442 ; 1 Pick. 535 ; 7 Ves. 348 ; 2 Nott. &
M'Cord, 485 ; 2 Hill. Ab. 493, § 5.

The reason is this : " For it does not appear to have been the
*intention* of the testator to revoke the former will without making
another disposition of his property, and as the latter branch of the
antecedent cannot be carried out, the law considers the act as a
nullity." 2 Stark, Ev. 935, Am. ed. tit. Wills.

And no change of *intention* on the part of a testator can be in-
ferred from the testamentary provisions of a will, which is void,
because not executed in the manner prescribed by law. 12 Leigh.
543 ; 1 Pick. 541.

*As a will,* this testamentary paper is wholly void upon its face.
There is but one single devise in it, and that, of the entire estate
*to a slave,* who, in the preceding clause, is directed to be emanci-
pated, when the laws forbid it. It is not void by matters *dehors*
*or extrinsic.*

It would have been more satisfactory if " these old cases and
dicta," above referred to, had furnished us with the reasons for
their conclusion. Powell, in his work on Devises, attempted to

Hairston et al. *v.* Hairston et al.

supply a reason, but Jarman says he *failed*.  See note above referred to.   Jarm. Powell on Dev. margin, 593, 594, note.

And Jarman doubts whether the cases would now be followed in England, and so he affords us no light.   In *Roper* v. *Radcliffe*, 10 Mod. R. 230, and Brown, Parl. Cases, no reason is given that I can find.

Hilliard, as we have seen, limits the doctrine.   "*May* operate, &c., if *obviously so intended*."   2 Hil. 493.

And Chancellor Kent says, that in *Roper* v. *Radcliffe*, the point was conceded on the ground of the *intention to revoke*.    *Walton* v. *Walton*, 7 Johns, Ch. R. 271.

But in *Laughton* v. *Atkins*, 1 Pick. 546, the court are of opinion that, "It must be confessed, that it is not easy to perceive any reason for the distinction formed by these two classes of cases, as far as they relate to the *intention* of the testator, for in the latter as well as the former, he manifests an intention not to die intestate."   "*Perhaps*," says the court, "the true ground is, that in the former to allow a defective will to be set up as a revocation, would contravene the statute, and in the latter it would not."  "But," continues the court, "if the principle deduced from the cases cited be true, that all that we can see of a design to revoke, is indicative of a purpose to substitute this for the one revoked, then, to give effect to the revocation, and to deny any effect to the disposition of the will, is *to thwart the intention of the testator*," p. 546. And see *Pringle* v. *M'Pherson*, 2 Brev. 290.

Notwithstanding the above supposition, as to what may *perhaps* be the true reason, yet in that very case, where a devising and revoking intention were expressed in the same instrument, it was decided that they were both so *inseparably connected*, that a decree of the Court of Probate against the admission of the instrument *as a will*, was *conclusive* against its validity as a common law *revocation*.    See 2 Hare & Wallace, Cases, 649.

And it cannot be the true reason, (we cannot see any reason in it,) because it is well settled, in both the ecclesiastical courts and the Court of Chancery, that an *express revocation*, in a will or codicil executed in due form, will be wholly inoperative, where it has proceeded upon a *mistaken impression as to the death of a*

*prior legatee, or the loss of a former will.* *Campbell* v. *French*, 3 Ves. 321; 1 Hag. Eccl. R. 378; *Doe* v. *Evans*, 10 Ad. & El.; 2 Hare & Wallace, Cases, 649.

In cases of fraud, duress, &c., there is due execution externally, but you go behind the face of the paper to discover the *real intention* of the testator; and if a man cancel a will under a mistake in law, that a second will (complete as to its execution,) operates upon the property contained in the first, when, from some clerical rule it really does not, shall this be deemed a cancellation? 1 Lomax on Ex'ors, 44; 1 Will. on Ex'ors, 72, 91; *Perrott* v. *Perrott*, 14 East, 440.

And if Lomax, Williams and Powell, are to be regarded as worthy of consideration, it must be granted that an *express* revocation of all former wills, though not wanting in any circumstance as a revocation, will operate as such, if it was only subservient to another disposition which fails. This rests upon the same principle with the doctrine of *cancellation*, &c., which depends on the *quo animo*, and this being pursued to its consequences, has introduced the doctrine of dependent relative revocations.

Since the doctrine of dependent relative revocations has been introduced and firmly settled, and the *quo animo* is considered the true test, it will be difficult to maintain the "old cases and dicta," if they ever had any principle to support them.

Besides, the statute provides for a revocation by a separate declaration in writing, as a distinct and independent act from making a subsequent will. And it would seem that if a person makes a will, and *as a part of it*, introduces a revoking clause, the parts taken together make but one single instrument, and ought to stand or fall together. The primary purpose is the devise, and any other is merely subsidiary, dependent, or relative. The design to revoke is indicative of a purpose to substitute the last will for the one revoked, and the two are inseparably connected.

But it is said that the testamentary paper is in due *form*, and that it appears to have been executed in compliance with the requirements of the statute; that it is true that the *purpose* of the testator cannot be carried into effect; that the will is wholly inoperative as testament; but, inasmuch, as the *forms* of the statute

have been complied with, it is good as a revocation, for that reason. The statute declares that no devise shall be revocable but by destroying, cancelling, or obliterating the same, or by a subsequent will, codicil, or declaration in writing.

Now, it is admitted, that a *cancellation, destruction, or obliteration* of a will by *mistake* is no revocation, yet a different rule is attempted to be applied to the *other kinds* of revocation mentioned, not only in the very same statute, but the very same sentence. The statute in *its terms* applies equally to both classes of cases, and what principle can take one class out of the provisions of the statute and not the other? In all the cases the will is executed according to the *forms of law*. Neither contradict it. You show something to prevent the application of the statute. You say that the paper was executed under a *mistake*, or was fraudulently procured to be made, or the like—that the *primâ facie* revocation was merely a dependent relative one, &c.; therefore, the *animus revocandi* is wanting, and it is no revocation.

And in the present case, there is no substantive clause of revocation, and the very paper shows that there was no intention to revoke, except as a mere incident to the primary purpose of disposing of the property by a last will and testament. "This my last will and testament, *which* revokes all others, &c." Unless there is a *will*, there is no revocation intended.

To say that a testamentary paper is executed according to the *form* of the statute, and then make the form destroy the substance, is in my opinion, being entirely given over to forms. It would be about as practicable, according to my mode of thinking, to hold a shadow or paint a sound, as it would be to assign any substantial reason for declaring a person to die intestate by last will and testament.

*D. C. Glenn*, on the same side, argued the case orally.

*Fulton Anderson*, for defendants in error.

The principal question involved in this case, relates to the construction of the act of 1821, concerning the revocation of wills. See Hutch. Code, 649, § 15. That act provides that a will shall

not be revoked, except by destroying, cancelling, or obliterating the same, or "by a subsequent will, codicil or *declaration in writing* made as aforesaid, that is, *with all the* formalities required in the execution of a will."

Counsel for plaintiffs in error contend, that under that act, a *will or declaration* in writing executed with all the required formalities containing a *clause of revocation* is invalid as a revocation, in case the testamentary clauses fail, either by reason of the incapacity of the party to take, or some illegality in the devise itself.

In this position, counsel admits that the English authorities are against him, nor has he succeeded in producing a single American authority to sustain him. An ingenious effort is, however, made to draw an analogy from the English and American authorities on the doctrine of cancellation and obliteration, which analogy, as I will show, is not a correct one, and is only calculated to bewilder and mislead one who does not keep in mind the distinction between revocations by cancellation or obliteration—themselves equivocal acts—and revocation by express declaration in writing, which cannot in the nature of things be equivocal, though it may be ambiguous. It is urged by counsel that the express revocation in this case being dependent, as they were prepared to prove, on the testamentary design of the testator in favor of the slave Chrimhiel, must fail with the failure of the clause in favor of said slave.

The doctrine of the English authorities on this question is clear and undisputed, and has been maintained by the greatest legal minds of that country, Lord Hardwicke's among the number. They all. concur in the proposition, "that a will *executed according to the statute*, though prevented from taking effect in consequence of some matter *dehors* the will, as by the incapacity of the person to whom the disposition is made, to take, *is a revocation* of former wills." And this, it will be seen, is held even in cases where there is no express clause of revocation, but where the revocation arises from the inconsistency of the last will with the former wills. 1 Lomax on Ex'ors, 52; *Eggleston* v. *Speeke*, 3 Mod. R. 258; *Onions* v. *Tyrer*, 1 Pr. Will. 345; *Ex parte Ilchester*, 7 Ves. R. 378; *Roper* v. *Radcliffe*, 10 Mod. R. 230; *Smith* v. *Ellis*, 1 Ves. R. 17; Lovelace on Wills, (23 Law Lib. 184;) 1 Jarm. on Wills.

153, 154; *Laughton* v. *Atkyns,* 1 Pick. 546; *Barksdale* v. *Barksdale,* 12 Leigh, R. 541.

The court will observe that Lomax, on page 52, where the general rule is laid down, adds a note, which counsel seems to think suggests a doubt of the doctrine, and which he strongly presses; but it will be manifest, on examination of the authorities referred to, that they not only do not sustain the doubt, (if one is suggested,) but on the contrary, establish clearly the rule for which I contend. It is said that Jarman, in his edition of Powell on Devises, suggests the same doubt, founded on the cases which hold that a revoking clause or an act of cancellation, is inoperative, because associated with " an ineffectual attempt to devise;" but not having access to this book, I do not know how far the author goes in asserting such a doubt. These doubts, with some not very forcible reasoning, or if forcible, not very applicable reasoning, of Judge Baldwin, in the case of *Barksdale* v. *Barksdale,* above referred to, in 12 Leigh, R., constitute the strength of counsel's case, in his direct assault upon what I consider to be the overwhelming weight of the English authorities.

But counsel, unable to find a single case either in England or America, in conflict with the decisions to which I have referred, has very ingeniously and very elaborately attempted to "give dignity" to the doubts alluded to, by a citation and review of the authorities, wherein it has been held; first, that an act of obliteration or cancellation, will not operate as a revocation, where such obliteration or cancellation is dependent upon or accompanied with an ineffectual attempt to devise; second, that an express revocation in writing is inoperative, when dependent upon or associated with an attempt to devise, which fails by reason of an insufficient execution of the will itself.

In reference to these authorities, I will therefore offer a few remarks. First, the intent with which an act of cancellation or obliteration is performed, is the all-important circumstance which makes it a revocation, the act itself being, in the language of the authorities, *equivocal,* and only being *primâ facie* evidence of the intent of revocation in a case of that kind. Inasmuch as it is a question of intent, it is fairly inferrible, that when the equivocal

act is accompanied with another on which it is dependent, and which fails of its effect, the *primâ facie* presumption of intent to revoke is rebutted, for an equally strong presumption arises, that the cancellation or obliteration would not have been done, but in subserviency to the different testamentary purpose, which has failed.

But will this reason apply to the case of an express revocation in writing? Clearly not, for in that case the act is not *equivocal*, though, as I have before remarked, it may be ambiguous.  Not being equivocal, you cannot seek for the intention or purpose, outside of the writing itself; though if it be on its face ambiguous, you might possibly seek an explanation *aliunde ;* of this, however, I need not express an opinion.  The intention, however, being plain on the face of the instrument, and that instrument being executed and proved with all the forms of law, you cannot from other sources vary or control the intent.  The question of intent, then, being the foundation of the doctrine relied on by counsel in reference to cancellations, that foundation fails him, when the question arises upon a mode of revocation which can leave no doubt of the intent.

Having pointed out this distinction, I might safely concede to counsel, that in cases of cancellation or obliteration, even where the associated testamentary purpose fails, by reason of "something *dehors* the will," the act of cancellation would work no revocation. But I believe I may say, with safety, that counsel has found no case, and can find no case, even of cancellation or obliteration, where the associated testamentary act has failed, from something *dehors* the will, and not from a defect in the execution of the will itself, that has been held not to work a revocation.  The reason is plain.  When the instrument is properly executed, the testator's will *is not defeated*, although his testamentary purpose may be invalid and inoperative.  This may be "too analytic" for counsel for plaintiff in error, (to adopt his own phrase,) but it seems to me to be sound sense and sound reasoning.  I cannot better illustrate the force of this distinction than by an illustration : take the case usually put in the books, of a testament in favor of a Roman Catholic, before the emancipation acts.  A testator making such a will is presumed to know the law, and to know the illegality of

his own testamentary purpose, and yet he may determine to make such a will, for many reasons. The most obvious one that occurs to me, is that the incapacity of the party to take, may be removed by law, or otherwise, before the will is complete by the testator's death. It is no answer to this to say, that in this particular case proof was offered, to show that the testator was ignorant of the law, because, when the testamentary purpose has been consummated, by a proper will or declaration, which is legally authenticated, you cannot defeat or change it, by showing ignorance of the law. 1 Williams on Ex'ors, 73, 74; 1 Jarm. on Wills, 351, 352, 353, 354.

And here again, the distinction (which counsel has not thought fit to notice,) presents itself. Cancellation or obliteration, being only *primâ facie* evidence of intention to revoke, anything which rebuts such presumption, is admissible in evidence ; and therefore proof that the testator was laboring under a mistake of either *law or fact*, when the act of cancellation was performed, is competent, since from such proof would arise the adverse presumption, that, had he been correctly informed, he would not have revoked his will. But this principle cannot, without a violation of all principle, be applied to written revocations, which cannot be altered or explained, added to or substracted from, by parol testimony. Let me illustrate again. A subsequent will, inconsistent with a former one, is *pro tanto* a revocation, without any express clause of revocation. Now, will it be contended in a case of that kind, that the devisee claiming under the first will, would be permitted to show a mistake of *law*, as the inducement to make the second will. And the same reasons which would exclude such evidence, would also exclude in the case of an express revocation in writing properly authenticated, which is in fact nothing less than a will.

I ask the particular attention of the court to the case of *Ex parte The Earl of Ilchester*, 7 Ves. jr. 371-381.

The principles for which I contend, are those maintained in the opinions of the Lord Chief Justice, the Master of the Rolls, (Sir William Grant,) and received also the sanction of Lord Eldon's opinion. Indeed, the question was by them considered as settled, that an instrument properly executed, inconsistent with a former

will, amounts to a revocation, even without an express clause of revocation, although from incapacity of the party to take, the last will should be wholly inoperative.

The reason for this is in fact irresistible.    The testator has in the mode required by law, declared what is his last *will*, and although the law may not allow him to make such a devise, yet his properly authenticated declaration of his will to that effect, is the best possible evidence that he could have no other will.

The views presented above, embrace all the points and authorities relied on by the plaintiffs in error, except some technical ones presented in the bill of exceptions to the action of the Court of Probate, confirming (under the verdict of the jury,) the will of the 7th March, 1852.    It is true, that in the bill of exceptions, it is stated that the plaintiffs in error offered to prove, that at the time of executing the will of the 7th of March, 1842, the testator was laboring under a mistake both of law and *fact;* but as the pretended mistake is stated in the bill of exceptions, and clearly amounts only to a mistake of *law* and *not* of fact, I have not thought proper to make any argument on the question, whether a mistake in the latter respect would invalidate the revocation, though if necessary, I could easily show that it would not.

Before calling attention to the technical point, I will notice one other position of plaintiffs in error.    It is said that the issue of *revocavit vel non* is one for the jury, as well as *devisavit vel non;* and that the court refused to grant this issue.    This is true, but this issue was not asked until the jury had decided all the substantial issues demanded by the plaintiffs in error against them.    But the truth is, that the issue of *revocavit vel non*, was in every sense decided by the jury, in deciding that the will of the 7th March, 1852, was duly executed, and that the testator was of sound mind at the time.

When the plaintiffs in error went further, and demanded an issue of *revocavit vel non*, under which a jury might try the intention to revoke, conditionally, or absolutely, they demanded what was clearly illegal and improper, if I am correct in the records presented on the point first discussed in this court.    A party might with as much reason, after a verdict on an issue of *devisavit vel*

*non,* "that the instrument presented was the last will and testament of the testator," demand another issue, whether he *intended* it to be his last will and testament.

But it is said, that the verdict was not responsive to the issue, and especially, that it did not find whether the writing of the 7th of March, 1852, was the last will and testament of the deceased.

I do not controvert the authorities cited to the point, that the jury must decide *substantially* all the *material questions* presented in *the issues;* and the question is, whether, in this case, they have done so ?

The jury found, that "Robert Hairston was of sound and disposing mind at the time of making the will of the 7*th of March,* 1852, and that the same was executed and attested according to law."

This covers substantially the whole issue ; but to give force to the objection, it is said, that under the issue of *devisavit vel non,* the questions of fraud and mistake would properly arise.

I have shown that the fact of mistake, such as is alleged, could not arise under this, or any other issue. The question of fraud certainly may come up under the issue of *devisavit vel non ;* but it is clear, if fraud had been proved, the jury could not have found that the will was executed and attested according to law.

*But it will be observed, that in regard to the will of the 7th of March,* 1852, there is not a single allegation in the petition of the plaintiffs in error, nor is there one word of proof, intimating the least suspicion of fraud. The petition alleges, in reference to the will of the 6*th of March,* 1842, that the testator was *induced* to make it when incapable of doing so, but that inducement, even, was not alleged to have been fraudulent. In reference to the will of the 7th of March, the only allegations on which it was sought to be impeached, were, that the testator was incompetent to make it, and that he made it under a mistake of law, in regard to the capacity of *Chrimhiel* to take the *property devised.* The verdict of the jury, therefore, covered all that was substantially in issue, and there is not the slightest pretence, that on sending the case back on the issue demanded, more could be effected, than to try

over again precisely what has been tried, and on the very same evidence.

It is also worthy of investigation, whether, since the act of 1841 was repealed by the present constitution, the sending an issue to the Circuit Court, is not merely a matter of discretion with the Probate Court, which will not, in any case, be a ground of error ?

*George S. Yerger*, on same side, argued the case orally.

Smith, C. J., delivered the opinion of the court.

This is a writ of error to a decree of the Court of Probate, of Lowndes county, admitting to probate a paper, purporting to be the last will and testament of Robert Hairston, deceased, dated the 7th of March, 1852.

The plaintiffs in error filed their petition in said court, in which they allege that Robert Hairston, deceased, on the 22nd of September, 1841, made his last will and testament, by which he devised to Robert Hairston, the son of Samuel Hairston, the whole of his estate, with the exception of a plantation and stock devised to George Hairston, the son of Robert Hairston, a plantation left to Robert Hairston, the son of Hardin Hairston, and a legacy of five thousand dollars, bequeathed to the said Robert, the son of George Hairston.   That, on the 6th of March, 1852, the testator, being then incompetent to make a will, was induced to execute a paper, purporting to be a will, by which he devised to a negro girl, one of his slaves—having previously directed her to be manumitted—his whole property, with the exception of a landing on the Tombigbee river, his lands on the west side of the same, and a few slaves ; and that the said testator, being still incompetent to make a testamentary disposition of his property, on the 7th day of March, 1852, was induced to execute another instrument, purporting likewise to be his last will and testament, in the following words, to wit :—

" This being my last will and testament, which revokes all other testaments by me made :—

"1st Item.—I will my body to its mother earth, and to be decently buried; and my soul to my Father, Almighty God.

"2nd Item.—I will Chrimhiel to be made free, according to the laws of Mississippi.

"3rd Item.—It is my will that she, the said Chrimhiel, possess all my estate, both real and personal, to me belonging.

"In witness whereof, I hereunto set my hand and seal.

"ROBERT HAIRSTON, [SEAL.]"

That this, with the will of the 6th of March, 1852, was made, not only when the testator was of an unsound mind, but under a mistaken belief that the slave Chrimhiel was legally capable of taking the estate bequeathed to her; that Chrimhiel died in August, 1852; and that the testator never intended to revoke the will of September, 1841, except on condition, and under the belief, that Chrimhiel could inherit his estate.

That the testator died within a few hours after having executed the last will, which, with the will made on the day previous, and that of September, 1841, was presented to the Court of Probate at the April term, 1852, and declared to be the last will and testament of the testator, and so far valid as to revoke all former wills; and that letters of administration, with the will annexed, were granted to George Hairston, one of the defendants in error. The petitioners prayed that certain issues might be made up and sent to the Circuit Court, to be tried according to law.

The several answers of the defendants to the petition, are substantially the same. They admit that the testator, about the 22nd of September, 1841, executed an holographic will in duplicate, one copy of which was sent to his brother, Samuel Hairston, of Virginia, and the other to Hardin Hairston, his brother, in Mississippi, with a direction upon the envelopes, that they were not to be opened until it was known that he had died; but the defendants were not informed that he had ever legally published the same.

They admit the execution of the will of the 6th of March, 1852, and insist that it was valid at the time of its operation, and that it amounted to a revocation of the former will. They admit the execution of the will of the 7th of March, 1852; and insist

that it was valid, and revoked all former wills. And they deny all the allegations of the petitioners, tending to show fraud in the procurement of its execution, or want of capacity or reflection in the testator, or that it was only his intention to revoke the will of the 22d of September, 1841, in the event or upon condition, that his bequest in favor of the negro girl Chrimhiel, could be carried into effect.

Upon the hearing of the cause in the Court of Probate, it was ordered and decreed that the following issue, to wit: "First, whether Robert Hairston, late of said county, deceased, was, on the 7th day of March last, 1852, at the time of the execution of the will of that date, mentioned in the said bill, of sound and disposing mind: second, whether the paper writing purporting to be the last will and testament of the said Robert Hairston, deceased, be the last will and testament of the said Robert or not?"—be made up and certified to the Circuit Court of said county, to be therein tried by a jury. The same issue was made up and certified to the Circuit Court, to be tried in reference to the wills executed on the 22nd of September, 1841, and the 6th of March, 1852.

The issue in reference to each of the said wills was tried by the jury, who returned their verdict in the following words:— "We the jury find, that the testator was of sound and disposing mind, at the time of making and executing the will of 1841; and also at the time of making and executing the wills of the 6th and 7th of March, 1852, and that said wills are executed and attested according to law."

The verdict having been certified to the Court of Probate, the complainants moved for a new trial; first, because the verdict was not responsive to the issues; and, second, because it does not find whether the said paper writing, purporting to be the last will and testament of Robert Hairston, deceased, be the last will and testament of the said Robert or not. The motion for a new trial was overruled, and the court, declaring its satisfaction with the finding of the jury, affirmed the probate of the will of the 7th of March, 1852, and dismissed the bill.

It is now insisted that this decree is erroneous, and should be reversed. The very learned and lucid arguments of counsel, upon

the questions connected with this proposition, have materially aided us in arriving at a satisfactory conclusion.

It is manifest that the principal questions involved in the cause, must depend mainly upon the construction which should be given to the first clause of the fifteenth section of the act, concerning last wills and testaments, &c., Hutch. Dig. 649, which declares that "no devise so made, or any clause thereof shall be revocable, but by the testator or testatrix destroying, cancelling or obliterating the same, or causing it to be done in his or her presence, or by a subsequent will, codicil, or declaration in writing made as aforesaid." That is, a will or codicil or declaration, to be effective, for the purpose of revoking a former will or any clause thereof, must be executed with the same formalities which are required in the execution of a will.

It is admitted that the testator's will, made on the 7th of March, 1852, the probate of which was confirmed by the decree in this cause, was executed with all the formalities required by the statute. It contains an express clause of revocation; and a wholly different disposition of his estate is made from that directed in the will of 1841.

Notwithstanding the plain and unambiguous language of the act, counsel contend that the latter will does not in law operate as a revocation of the former. Because, say they,—that will having failed as a testamentary act, by reason of the incapacity of the devisee to take, it ought not to operate as a revocation, as it is clear that the intention to revoke, or the act of revocation, was only intended to be subservient to the new disposition of his estate.

That in cases of this character the testator, by the execution of his will, has made a complete disposition of his property; and has thus clearly manifested an intention not to die intestate. By the execution of another will, he manifests a like intention. If therefore the latter, for some reason *dehors* the instrument, should fail in its purpose, but should nevertheless be held to revoke the prior will, the testator would thus be compelled to die intestate, against his manifest intention. Hence the above conclusion.

In cases like the one at bar, in which the will contains an

express clause of revocation, and upon the face of it there is nothing from which it could be inferred that the testator intended only to revoke conditionally, and in subserviency to some other purpose; if the mere fact, that the bequests in the will, not from any defect in its structure or attestation, but from some extraneous circumstance, have failed, could authorize the presumption of a conditional or dependent revocation,—an unequivocal clause of revocation in a will duly attested would stand precisely on the same footing with an act of destruction, cancellation, or obliteration, which are equivocal in their very nature,—amount to but *primâ facie* evidence of an intent to revoke, and depend exclusively for their efficacy upon the *quo animo* with which they are performed. Lomax, Ex'ors, 42.

It will not be denied, that a declaration made and attested in the mode prescribed by the statute for the execution of wills, the object of which was the revocation of a prior will, would be conclusive of such intention. And, therefore, in any controversy which might arise, in reference to the efficacy of the instrument as an act of revocation, it would be incompetent to introduce evidence to prove that the declaration was not designed to operate as an absolute, but only as a conditional revocation, relative to, and dependent upon the happening of some event. Hence it is difficult to conceive, upon what principle a clause of revocation, unequivocal and unconditional, in a will duly attested, would be less conclusive as to the intention to revoke, or less efficacious for that purpose, because the devises have failed, in consequence of the incapacity of the devisees to take. The power to revoke any disposition of his estate, made by will, is expressly given by law to the testator: but any act of revocation, to be efficacious, must be performed in some one of the modes prescribed in the statute; in each of which, the intention to revoke—the essential ingredient in an act of this character—must be clear and unequivocal, and manifested in the precise manner directed in the act. A will, executed with all the requisite formalities, and containing an express clause of revocation, although from some cause *dehors* the instrument, it may be inoperative as a testamentary act, unquestionably fulfils every requisition of the statute, whether it

be regarded as a will, or as a declaration in writing designed simply as a revocation.

An instrument propounded as a revocation, if it be in form a will, must be perfect as such, and be subscribed and attested as required by the statute. Hence, an instrument intended to be a will, but failing of its effect as such, on account of some imperfection in its structure, or for want of due execution, cannot be set up for the purpose of revoking a former will. This principle is well settled by many decisions in the English courts of law and equity; and those decisions have been followed in some of the states of this confederacy, whose statutes concerning wills are similar to the English statutes on the same subject. *Eccleston* v. *Speeke*, Carth. 79; *Simbrey* v. *Mason & Hyde*, Comyns, 451; *Onions* v. *Tyrer*, 2 Vern. 742; *Ex parte Earl of Ilchester*, 7 Ves. jr. 348; 1 Pick. 535; 2 Brev. 290; *Barksdale* v. *Barksdale*, 12 Leigh, R. 541.

There is a material difference between the devising and revoking clauses contained in the fifth and sixth sections, chapter third of the statute 29 Car. 2. By the former, it was made essential to the validity of a will, that it should be attested by the witnesses in the presence of the testator, which was not required in revoking. By the latter, it was necessary that an instrument designed as a simple act of revocation should be subscribed by the party executing it in the presence of the attending witnesses, which was not requisite in the attestation of a will. This essential difference in the provisions of the statute in reference to the execution and revocation of wills, has probably led to the recognition of the rule above stated.

It is manifest, that such a doctrine cannot legitimately be based upon our statute. For no will, under its provisions, can be valid as a testamentary act, which was not subscribed and attested in the mode required in the execution of a declaration intended as a simple act of revocation: and no declaration designed for the purpose of revocation, can be efficacious for that purpose unless executed with all the formalities required in the execution of a will.

But if this doctrine of the English courts were recognized here in its fullest extent, it would not affect the question, whether or not the will of September, 1841, was revoked by that of the 7th of

Hairston et al. *v.* Hairston et al.

March, 1852.    For by a long train of decisions, in which have con-
curred many of the greatest legal minds which have adorned the
English bench, it is equally well settled, that "a will duly executed
according to the statute, though prevented from taking effect, in
consequence of some matter *dehors* the will, as the incapacity of the
person to whom the disposition is made, to take, is a revocation of
a former will."    1 Jarm. Powell on Dev. 586; 1 Lomax on Ex'ors,
52; *Eccleston* v. *Speeke*, 3 Mod. R. 258; *Onions* v. *Tyrer*, 1 Pr.
Will. 345; *Smith* v. *Ellis*, 1 Ves. 17; *Roper* v. *Radcliffe*, 10
Mod. R. 230; *Ex parte Ilchester*, 7 Ves. jr. 378.    And this
result will follow where the devises of the last will are inconsistent
with the disposition made of the estate by the prior will, although
there is no revoking clause.    Lomax on Ex'ors, 48; 1 Powell on
Dev. 586.    This doctrine has been adopted without exception, by
the courts in this country; at least we have found no case, nor have
we been cited to one in which a contrary doctrine was laid down.

But counsel insists that the old "English cases and dicta," in
favor of the revoking operation of a devise which fails from the
incapacity of the devisee to take, ought not to be followed by this
court.    They endeavor in support of this proposition, to assimilate
the case at bar to those classes of cases in which it has been held,
that "a revoking clause or an act of cancellation is inoperative
when associated with an ineffectual attempt to devise."    But no
case, as we have above remarked, has been found or cited by
counsel, in which the principle contended for has been applied.
Lomax and Powell have been referred to as questioning the pro-
priety of the rule on this subject, as recognized by the previous
cases in England, and as expressing a doubt whether they would
now be followed.    1 Lom. on Ev. 52; 1 Pow. on Dev. 593, note.

The reason why a revoking clause, when associated with an
ineffectual attempt to devise, has been uniformly held to be inope-
rative, is very clearly stated in *Ex parte Ilchester*, before cited.
"Where," says the Master of the Rolls, "there is nothing but the
mere fact of a new devise, the intention to revoke can only be con-
sidered with reference to the new devise, and as the testator means
to give effect to it; and if the instrument is so made as to be inca-
pable of operating, I cannot conceive how an instrument, inopera-

tive to its direct purpose, can give effect to an intention of which I know nothing, but by that purpose. I know nothing of this intention, but by the manifestation of the other."

The reason assigned why the intention to revoke in that case, should not take effect, is not applicable to the case under consideration, for this obvious reason; the intention to revoke was not associated with, or dependent upon a disposition, which failed by reason of the insufficient execution of the will. Indeed, it may be truly said, that in such cases, the will of the testator has not been defeated, although, by reason of the incapacity of the devisee, his testamentary purpose is invalid. As in the case at bar, the testator was presumed to know that the devisee was legally incapable of taking under the will, yet we must suppose, that he determined, under this circumstance, to execute the will, which he did, believing that the incapacity of the devisee would be removed by law, or by some other means, before the will would be consummated by his own death.

It is equally clear that the rule which renders an act of obliteration or cancellation, when coupled with an ineffectual attempt to make a new devise, inoperative as a revocation, does not apply in the case before us.

An act of cancellation or of obliteration, when offered as a revocation, is never regarded as conclusive of the intention to revoke, which is the essential ingredient in an act of revocation. It is equivocal in its very nature; and is never held to amount to more than *primâ facie* evidence. In a case of this kind, where the question is always one of intention, it is fairly inferrible, where the act of cancellation is associated with another, upon which it is dependent, and which fails of effect, the *primâ facie* presumption of an intent to revoke is rebutted, and another presumption arises, "that the cancellation or obliteration would not have been done, but in subserviency to the different testamentary disposition, which has failed."

But this reason cannot be applied to a case of express revocation, by a will duly executed according to the statute. In such a case, the act of revocation is unequivocal; and not being equivocal, it is incompetent to seek for the intention outside of the in-

VOL. I.—20

strument itself. The very ground on which the argument of counsel is based, that is, the assumption that an express clause of revocation in a will duly executed, according to the statute, amounts to only *primâ facie* evidence of the intention to revoke, fails them here. Indeed, the doctrine of dependent relative revocations, in which the act of cancelling, &c., being done with reference to what is intended to be an effectual disposition, will be a revocation or not, according as the relative act is efficacious or not, can have no relevancy to a case in which the intent to revoke is declared in a will or declaration in writing, duly executed, and which is, of necessity, unequivocal, and therefore conclusive as to such intent.

The complainants, in their bill prayed that certain issues might be made up, and certified to the Circuit Court, to be tried by a jury. Amongst these were the following issues, to wit : " Whether the said instrument, executed on the 7th of March, 1852, was executed under the mistaken belief, that the said negro child slave, therein mentioned, was capable in law of taking the estate therein devised ?"—" whether the said instrument, executed on the 7th of March, was intended by the testator to revoke all other wills at all events, or only to give effect to the disposition of his estate to the said devisee, in the event she was adjudged capable in law, of taking the estate therein devised?"—and "whether the said will was procured or executed by fraud, under misrepresentation, or misunderstanding of either law or fact, influencing said testator thereto ?"

The court refused to order these issues to be made up and certified, but directed the two issues above recited to be made up and certified to the Circuit Court. This action of the court constitutes the subject of another exception.

Counsel insist that this was error, inasmuch as the questions of *revocavit vel non*, of mistake of law and fact, and of fraud in the procurement of the execution of the will, were excluded from the consideration of the jury.

The bill, in reference to the will of the 6th of March, 1852, alleges that the testator was induced to execute it; but it is not stated that such inducement was fraudulent. And in regard to the will of the 7th of March, 1852, the only allegations by which

it is impeached were, that the testator was legally incompetent to dispose of his estate by will; and that he made it under a mistake of law, in reference to the capacity of the devisee to take the property bequeathed. But if it were conceded that the complainants, upon the allegations of the bill, were entitled to have an issue made up to try the question of fraud—which, we apprehend, they were not—it is clear that they were not prejudiced, as the question of fraud might with propriety have been considered by the jury, under the issues ordered by the court.

The issue, in regard to the question, whether the testator made the will of the 7th of March under a mistake as to the legal capacity of the devisee to take the bequest, in our opinion was properly excluded from the jury. From the principles above laid down, the fact that the testator laboured under a misapprehension, as to his power to bequeath his property to a slave—which was a mistake of law, and not of fact—could not render the will, made under such misapprehension, invalid as a revocation of his former wills. It was, therefore, an issue which, decided either way, could have had no effect upon the questions in the determination of which the complainants were interested.

The issue of *revocavit vel non* was substantially involved in the second issue certified to the Circuit Court; and when the jury found that the testamentary paper of the 7th of March, 1852, was the last will and testament of the testator, duly executed, according to all the formalities prescribed by the statute, they determined that issue; as the necessary and legal effect of the establishment of the will of the 7th of March, 1852, as the last will and testament of the testator, was the revocation of all his wills of prior date.

It is further objected, that the verdict is not responsive to the issues submitted to the jury; and that they failed entirely to find whether the testamentary paper of the 7th of March, 1852, was the last will and testament of the deceased.

It is unquestionably true, that the jury must find all the material questions presented by the issues submitted to them. Was the verdict of the jury a substantial finding of the issues?

- The jury found that " Robert Hairston was of sound and dis-

posing mind at the time of making the will of the 7th of March, 1852 ; and that the same was executed and attested according to law." This, we think, was a sufficient finding ; it covers, substantially, the whole issue.

Some other objections are urged, which we deem it unnecessary to notice.

Believing the decree to be correct, we order it to be affirmed.