276 So.2d 661 (1973)
Mrs. Ida May CROSBY et al.
v.
ALTON OCHSNER MEDICAL FOUNDATION.
No. 46953.
Supreme Court of Mississippi.
April 16, 1973.
Rehearing Denied May 14, 1973.
*662 Hall, Callender & Dantin, Columbia, Heidelberg, Woodliff & Franks, W. Swan Yerger, Jackson, Sherman Muths, Jr., Gulfport, for appellants.
White & Morse, Gulfport, Malcolm L. Monroe, John Thomas Lewis, New Orleans, La., for appellee.
INZER, Justice:
This is an appeal by the Executors of the Estate of Hollis H. Crosby, deceased, and his heirs at law from a decree of the Chancery Court of Harrison County holding valid a charitable bequest in favor of appellee, Alton Ochsner Medical Foundation.
Hollis H. Crosby died on March 25, 1971, leaving a last will and testament dated January 20, 1971. He was survived by his wife and two daughters. His will was probated in the Chancery Court of Harrison County in common form. Thereafter on June 4, 1971, the joint executors named in the will filed a petition for probate of the will in solemn form and for construction of Item III of the will. This item bequeathed one half of the residue and remainder of the testator's estate to his wife and one half to Alton Ochsner Medical Foundation. The petition alleged that the medical foundation was a scientific, educational, literary and charitable corporation and in view of the fact that the testator died within ninety days from the date of the will, the bequest to it appeared to be void under the provisions of Mississippi Constitution § 270 (1890), as amended, and Section 671, Mississippi Code 1942 Annotated (1956). The petitioners asked for adjudication as to the validity of the bequest to Alton Ochsner Medical Foundation.
Appellee, Alton Ochsner Medical Foundation, sometimes referred to as medical foundation, answered and alleged that neither Section 671, Mississippi Code 1942 Annotated (1956), nor Mississippi Constitution § 270 (1890), was applicable to the bequest for the reason that the bequest to it was not more than one-third of the gross estate of the deceased. Appellee further alleged that even if the Mortmain Statute in Mississippi were applicable, it could have no effect other than reducing the amount of the bequest to an amount equivalent to no more than one-third of the gross estate. It was also alleged that the doctrine of dependent relative revocation applied. The answer was made a cross petition against the executors and the surviving wife and daughters alleging that on September 11, 1970, at a time when fully competent, Hollis H. Crosby had duly executed a will by the terms of which he had made a similar devise to the medical foundation, but that the instrument was no longer in existence because Hollis H. Crosby thought he had executed a valid new will and attempted to revoke the instrument by physical destruction. It was alleged that the revocation was ineffectual as to the bequest in favor of medical foundation as it was only meant to take effect, if and when another will carrying out the intent of the testator was properly executed. *663 The cross petition alleged that if it were held that the bequest under the January 20, 1971, will was ineffectual, then that portion of the September 11, 1970, will, insofar as it dealt with the bequest in its favor, should be entered for probate under the doctrine of dependent relative revocation.
Mrs. Ida May Crosby, the widow, and her two daughters answered the cross petition, denied the allegations of the cross petition, alleged that if Hollis H. Crosby had executed a will on September 11, 1970, it was not then in existence and that he had destroyed it, intending that the same be revoked, and further alleged that all former wills were expressly revoked by the will of January 20, 1971, and such revocation rendered invalid all parts of the will of September 11, 1970. The executors of the estate filed a similar answer to the cross petition.
On the hearing of the cause, petitioners introduced into evidence the proceedings probating the 1971 will in common form. It was then stipulated that medical foundation was in fact a charitable foundation and was at the time of the death of the testator and that the bequest to it under the terms of the will would be less than one-third of the distributable estate. It was also stipulated that his widow, Mrs. Ida May Crosby, and his two daughters, Mrs. Henrietta C. Levings and Mrs. Molly May Crosby Taggart, were the sole surviving heirs at law of Hollis H. Crosby.
Over the objection of the executors and the heirs, medical foundation was allowed to introduce evidence establishing that on September 11, 1970, Mr. Crosby had executed a will that was properly attested in which Item III of that will was virtually identical with Item III in the January 20, 1971, will. Mr. Bernard Callendar, who was Mr. Crosby's personal attorney and as such handled all of Mr. Crosby's legal work, prepared both wills at the request of Mr. Crosby. Mr. Callender had in his possession a conformed copy of the September 11, 1970, will as to dates and signatures. Mr. Callender testified that he advised Mr. Crosby relative to the mortmain statute briefly before he executed the will on September 11, 1970, but did not discuss the mortmain statute with him before he executed the January 20, 1971, will. It was established that the September 11, 1970, will was duly executed, but it was destroyed at the express instruction of Mr. Crosby after the January 20, 1971, will was executed. There was also testimony that Mr. Crosby was for several years a director of the medical foundation. Medical foundation offered testimony showing that Mr. Crosby had made ample provision for his children before he executed both wills. An objection was sustained to this testimony.
The chancellor took the matter under advisement and briefs were submitted by counsel representing opposing parties. The chancellor rendered a written opinion, which is a part of the record. The chancellor was of the opinion that the bequest to medical foundation was valid under the January 20, 1971, will. The chancellor also was of the opinion that the doctrine of dependent relative revocation applied and admitted to probate in solemn form the January 20, 1971, will and Item III of the September 11, 1970, will thereby sustaining the bequest to medical foundation. It was his opinion that although the will of January 20, 1971, contained an express clause of revocation, it was not the testator's intention to revoke the 1970 will insofar as Item III of the will was concerned because this Item was the same in both wills. The chancellor also observed that the provisions of the 1970 and 1971 wills are very similar in their terms, provisions and bequests and that this was a significant factor in applying the doctrine of dependent relative revocation. A decree was entered in accordance with the opinion admitting to probate in solemn form the 1971 will and Item III of the 1970 will, thereby validating the bequest to medical foundation. Hence, this appeal.
*664 The pleadings raised two basic issues in the trial court and the same basic issues must be determined by this Court. The first issue raises the question of whether a charitable bequest of less than one-third of the estate made by a person who was survived by a wife and children is void when the testator dies in less than ninety days after the date of the execution of the will under the provisions of Mississippi Constitution § 270 (1890) and Section 671, Mississippi Code 1942 Annotated (1956), and secondly, if it is void, was a similar bequest contained in an earlier will revived by the doctrine of dependent relative revocation when the last will expressly revoked the former will.

PART I
We will concern ourselves with the first question because if the bequest is valid under the January 20, 1971, will, then the second question becomes moot insofar as this appeal is concerned. The pertinent part of Mississippi Constitution § 270 (1890), is as follows:
No person leaving a spouse or child, or descendants of child shall, by will, bequeath or devise more than one-third of his estate to any charitable, religious, educational or civil institutions, to the exclusion of such spouse or child, or descendants of child, and in all cases the will containing such bequest or devise must be executed at least ninety days before the death of the testator, or such bequest or devise shall be void.
The pertinent part of Section 671, Mississippi Code 1942 Annotated (1956), is for all intents and purposes in the same language. Prior to the adoption in 1940 of Section 270, in its present form, Section 269 of the Constitution prohibited a devise of lands for religious or charitable purposes. This section was repealed at the same time that Section 270 was amended. Prior to the amendment of Section 270 it prohibited any bequest of personal property to religious or ecclesiastical corporations or societies. By the adoption of Section 270 the restrictions on the right of a person to make a will were liberalized and such devises and bequests were permitted under certain specified limitations and restrictions. It seems to be clear from a reading of the pertinent part of Section 270 that it provides that any bequest by any person leaving a spouse or child or descendants of a child of over one-third of testator's estate is void to the extent that it exceeds one-third of the estate and that any will containing a devise of more or less than one-third of the estate must be executed at least ninety days before the death of the testator or such bequest or devise will be void. However, medical foundation contended in the trial court and contends here that if the bequest or devise is not more than one-third of the estate, then the ninety day provision does not apply. With this contention we cannot agree. In Bell v. Mississippi Orphans Home, 192 Miss. 205, 5 So.2d 214 (1941), there was involved several charitable requests by a testatrix, who did not leave surviving her a husband or child, or descendants of a child. The will was made less than ninety days before her death and it was contended that the ninety day provision of Section 270 applied to every charitable bequest. In rejecting this contention this Court said:
It is our opinion, however, that this position is untenable. The first paragraph of these provisions prescribes the maximum portion of the estate of the person "leaving a spouse or child, or descendants of child", that may be devised to "any charitable, religious, educational or civil institutions, to the exclusion of such spouse or child, or descendants of child", and has no reference to bequests or devises made under the will of a person not coming within that description; also the provision contained therein which prescribes a minimum period of time for such a last will and testament to be executed prior to the death of the testator, in order to be valid, requires only those *665 wills containing such a bequest or devise, that is to say, a bequest or devise in favor of such an institution made by a person leaving a spouse or child, or descendants of child, and to the exclusion of them, to be executed at least ninety days, before the death of the testator. (Emphasis added)
(192 Miss. at 214, 215, 5 So.2d at 216).
The Court in substantiating the foregoing statement quoted from and adopted the holding of the Supreme Court of Georgia in Reynolds v. Bristow and Kent, 37 Ga. 283, 287 (1867), wherein that court construed the words "and in all cases the will containing such bequests or devise must be executed at least ninety days before the death of the testator" to apply to all cases where the testator leaves a wife or child or descendants of child, whether he attempts to devise as much as one-third of his estate to charitable uses or a lesser portion of his estate for that purpose, and in all such cases the devise must be executed at least ninety days before the death of the testator. The court stated that the object of the statute was to protect the testator's wife and children from improper influence that might be exercised over a person when in extremis, thereby inducing him to devise any portion of his property to charitable uses, and in all cases when that is attempted to be done the will must be executed ninety days before death.
Medical foundation points out that in Hood v. First National Bank of Columbus, 219 Ga. 283, 133 S.E.2d 19 (1963), that the Georgia court has now interpreted their statute to mean that it is only where a testator leaving a wife, child or descendants of the child, devises more than one-third of his estate to any charitable, religious, educational or civil corporation does the ninety day provision apply. In so holding the court said:
No limitation is put upon his capacity to devise less than a third of his estate to such institutions, and none is placed upon his capacity to devise more than one-third of his estate to the named institution except that it must be done more than 90 days before his death, else "such devise" is void. (219 Ga. at 285, 133 S.E.2d at 21).
In so holding the Georgia court expressly overruled several of their cases holding to the contrary. It is argued that since this Court adopted the interpretation the Georgia court had placed on their statute at the time we adopted it, we should now follow the interpretation that the Georgia court has now placed on this statute. We did hold that by adopting a mortmain statute patterned after that of Georgia, we adopted the interpretation which Georgia had placed on their statute at that time. This does not mean that this Court is bound by any and all interpretations which the Georgia courts may subsequently place upon their mortmain statute. Especially is this true when the court changes a former interpretation of the statute. For a discussion of this subject See 50 Am.Jur., Statutes § 460, 82 C.J.S., Statutes § 373(b). A reading of Hood v. First National Bank of Columbus, supra, indicates that what the Georgia court did was to amend their mortmain statute by a judicial decision. While the Georgia court may be free to legislate, we are constrained to leave legislation to our legislative branch. Furthermore, our mortmain law is imbedded in our Constitution, and our Constitution cannot be changed except as provided by the Constitution itself. Having construed Section 270, we do not think that we should change that construction by judicial decision. We are content to follow the interpretation that was heretofore placed on our mortmain statute and hold that the ninety day provision was applicable to the bequest to appellee in the January 20, 1971, will of Mr. Crosby.

PART II
Therefore, the bequest is void unless, as found by the chancellor that Item III of the September 1970 will was revived by the doctrine of dependent relative revocation. *666 Appellants contend that the chancellor was manifestly in error as a matter of law and fact in allowing the probate of Item III of the September 11, 1970, will in addition to the will of January 20, 1971, under the doctrine of dependent relative revocation. Appellants point out that the first paragraph of the 1971 will contains the statement: "... do hereby make, ordain, publish and declare this my last will and testament, hereby expressly revoking all former wills by me made." (Emphasis added). Appellants contend that this unequivocal revocation of the 1970 will is final and that it cannot be revived under the doctrine of dependent relative revocation although the provisions of the 1970 will are practically the same as the 1971 will. It is argued that a number of states including Mississippi are committed to the rule that the doctrine of dependent relative revocation cannot be applied to revive a prior will which has been revoked by an express provision of a properly executed and attested subsequent testamentary instrument. It is also argued that in such a case there can be no question, nor can the court indulge in any presumption as to the intent of the testator to revoke all prior wills, since his intention in this regard is unequivocally expressed in the latter instrument. In support of this argument appellants cite and rely upon Hairston v. Hairston, 30 Miss. 276 (1855).
It would probably be helpful at this point if we inquire as to the meaning of the term "doctrine of dependent relative revocation." The doctrine is not a substantive rule of law, but is rather a rule of presumed intention. In discussing this doctrine the Supreme Court of Florida said in In re Pratt's Estate, 88 So.2d 499 (Fla. 1956):
The doctrine of dependent relative revocation becomes less abstruse and more comprehensible under other names. In the most celebrated article on the subject, Warren, Dependent Relative Revocation, 33 Harv.L.R. 337, the author suggests "revocation under a mistake". Thus if the testator by codicil, revokes a portion of a prior testamentary instrument and makes a substituted disposition under a mistake of fact or of law with the result that the later disposition is invalid, the prior disposition is revived on the theory that had the testator not been mistaken in his belief he would not have revoked the original gift. As explained by the Supreme Court of Iowa in Blackford v. Anderson, 226 Iowa 1138, 286 N.W. 735, 746:
The basis for the doctrine of dependent relative revocation, or conditional or mistaken revocation, as it is sometimes called, is that there was never any revocation of the earlier instrument, or real intention to revoke, because of a mental misconception of the effect of his act, on account of mistake, or ignorance, or some other error.
The doctrine is called "conditional revocation" upon the theory that the testator has revoked the former gift only on condition that the later gift will be operative. Atkinson on Wills, 2d Ed. pp. 452-463. (88 So.2d at 501).
Thus, it is apparent that ordinarily the revocation dealt with under the doctrine is either a conditional revocation or a revocation under a mistake. Warren in his article referred to above suggests that these two classes may be properly considered from the point of view of (a) revocation by act to the document, or (b) revocation in writing. It is also of interest that Professor Warren states in his article that Hairston v. Hairston, supra, is one of the two leading American cases on this subject.
In Hairston, the testator executed his first will on September 22, 1841, wherein he named plaintiffs in error as legatees. On March 6, 1852, the testator executed a second will in which he named a slave girl as the primary beneficiary thereunder. On the following day March 7, 1852, the testator executed a third will in which he specifically *667 revoked all prior wills and devised all of his estate to the aforementioned slave girl and died a few hours later. The will of March 7, 1852, was admitted to probate in common form by the probate court. The plaintiffs in error, who were the beneficiaries under the will of 1841, thereupon filed their bill of complaint seeking to have the probate of the will set aside and have the will of 1841 established as the last will and testament of the decedent. After the filing of the defendant's answer a jury was empaneled to try the issues as to mental capacity of the testator and due execution of each of the wills offered for probate. The jury found that the testator was of sound and disposing mind at the time of making and executing each of the instruments, and all the instruments had been executed and attested according to law. The court, being satisfied with the verdict of the jury and being of the opinion that the will of March 7, 1852, was a good revocation of the former will, confirmed the probate of the will of March 7, 1852, and dismissed complainant's bill.
On appeal this Court stated:
It is manifest that the principal questions involved in the cause, must depend mainly upon the construction which should be given to the first clause of the fifteenth section of the act, concerning last wills and testaments, &c., Hutch., Dig. 649, which declares that "no devise so made, or any clause thereof shall be revocable, but by the testator or testatrix destroying, cancelling, or obliterating the same, or causing it to be done in his or her presence, or by a subsequent will, codicil, or declaration in writing made as aforesaid." That is, a will or codicil or declaration to be effective, for the purpose of revoking a former will or any clause thereof, must be executed with the same formalities which are required in the execution of a will. (Emphasis added). (30 Miss. at 301).
At this point it should be noted that this part of the statute referred to above has been brought forward in all our codes and is now Section 658, Mississippi Code 1942 Annotated (1956), and the pertinent part reads as follows:
A devise so made, or any clause thereof, shall not be revocable but by the testator or testatrix destroying, canceling, or obliterating the same, or causing it to be done in his or her presence, or by subsequent will, codicil, or declaration, in writing, made and executed; ... .
It is apparent that for all intents and purposes this part of the statute is the same now as it was in 1855.
It was contended by the appellants in Hairston that the last will did not operate in law as a revocation of the former because the will having failed as to a testamentary act by reason that the slave girl was prohibited by law from taking under the will, and it was clear that the intention to revoke was conditioned on the new disposition becoming effective. It was also contended that it was clear that the testator did not intend to die intestate. It was further contended that the express clause of revocation in a will only amounted to a prima facie evidence of intent to revoke and its efficacy depended upon the intent or motive of the testator. This Court in answer to these contentions said:
In cases like the one at bar, in which the will contains an express clause of revocation, and upon the face of it there is nothing from which it could be inferred that the testator intended only to revoke conditionally, and in subserviency to some other purpose, if the mere fact, that the bequests in the will not from any defect in its structure or attestation, but from some extraneous circumstance, have failed, could authorize the presumption of a conditional or dependent revocation,  an unequivocal clause of revocation in a will duly attested would stand precisely on the same footing with an act of destruction, cancellation, or obliteration, which are equivocal in their very nature,  amount to but prima facie *668 evidence of an intent to revoke, and depend exclusively for their efficacy upon the quo animo with which they are performed.
It will not be denied that a declaration made and attested in the mode prescribed by the statute for the execution of wills, the object of which was the revocation of a prior will, would be conclusive of such intention. And, therefore, in any controversy which might arise, in reference to the efficacy of the instrument as an act of revocation, it would be incompetent to introduce evidence to prove that the declaration was not designed to operate as an absolute, but only as a conditional revocation, relative to, and dependent upon, the happening of some event. Hence it is difficult to conceive, upon what principle a clause of revocation, unequivocal and unconditional, in a will duly attested, would be less conclusive as to the intention to revoke, or less efficacious for that purpose, because the devises have failed, in consequence of the incapacity of the devisees to take. The power to revoke any disposition of his estate, made by will, is expressly given by law to the testator: but any act of revocation, to be efficacious, must be performed in some one of the modes prescribed in the statute; in each of which, the intention to revoke  the essential ingredient in an act of this character  must be clear and unequivocal, and manifested in the precise manner directed in the act. A will, executed with all the requisite formalities, and containing an express clause of revocation, although from some cause dehors the instrument, it may be inoperative as a testamentary act, unquestionably fulfills every requisition of the statute, whether it be regarded as a will, or as a declaration in writing designed simply as a revocation. (Emphasis added) (30 Miss. at 301-303).
The court pointed out that it was well settled that a will containing the express revocation clause and duly executed according to the statute, though prevented from taking effect for some matter dehors of the will as the incapacity of the person to whom the devise is made to take, is a revocation of a former will. The Court then by way of dicta said that the same result would follow when the devises of the last will are inconsistent with the disposition made of the estate by the prior will, although there is no revoking clause. This dicta has been adopted by this Court and there is now well-settled law in this state. See Crawford v. Crawford, 225 Miss. 208, 82 So.2d 823 (1955).
The Court in construing the statute pointed out that an act of destroying, cancellation, or obliteration set out in the first part of the statute is never regarded as conclusive of the intent to revoke and amounts only to a prima facie evidence of intent. The Court said in such a case where the act of cancellation is associated with another, upon which it is dependent and which fails in effect, the prima facie presumption is rebutted. Then the Court in construing that part of the statute which states "or by a subsequent will, codicil, or declaration in writing made as aforesaid," said:
But this reason cannot be applied to a case of express revocation, by a will duly executed according to the statute. In such a case, the act of revocation is unequivocal; and not being equivocal, it is incompetent to seek for the intention outside of the instrument itself. The very ground on which the argument of counsel is based, that is, the assumption that an express clause of revocation in a will duly executed, according to the statute, amounts to only prima facie evidence of the intention to revoke, fails them here. Indeed, the doctrine of dependent relative revocations, in which the act of cancelling, &c., being done with reference to what is intended to be an effectual disposition, will be a revocation or not, according as the relative act is efficacious or not, can have no relevancy *669 to a case in which the intent to revoke is declared in a will or declaration in writing, duly executed, and which is, of necessity, unequivocal, and therefore conclusive as to such intent. (Emphasis added). (30 Miss. at 305, 306).
It is clear from what was said in this case that the doctrine of dependent relative revocation cannot be employed to revive a will that has been expressly revoked by the testator when the revocation is expressed in a subsequent will or a declaration in writing duly attested, it is conclusive of the testator's intent and evidence to show to the contrary is not admissible.
This holding was followed in Vining v. Hall, 40 Miss. 83 (1866), wherein this Court stated:
The case before us only presents the question of the establishment of the revocation clause, which is clearly proven. The case of Hairston v. Hairston, 30 Miss. page [276], and authorities there cited, clearly settle our duty in this respect, holding that a will duly executed according to the statutes, though prevented from taking effect in consequence of some matter dehors the will, as the incapacity of the person to whom the disposition is made to take, is a revocation of a former will. (40 Miss. at 107).
In spite of the clear and positive holding in the foregoing cases, the chancellor was of the opinion that the rule announced in Hairston did not apply to the facts of the case now before us. It was his opinion that the express revocation clause contained in the January 1971 will should not be given any greater weight than any other provision in the testator's will. He concluded that to put undue stress on the revocation clause rather than giving equal stress to the positive provisions of the will would not only defeat the testator's intent, but is contrary to the well-settled legal principles and particularly with reference to charitable bequests. We are unable to agree with the learned chancellor. It has been well-settled law in this state since 1855 that an express revocation clause in a will revoking all former wills when duly executed and attested according to law is unequivocal and conclusive of the intent of the testator. The fact that a legacy fails because the devisee cannot take under the law does not affect the revocation. Where there is an express revocation clause it is conclusive of the testator's intent and it is incompetent to introduce evidence to show otherwise.
Medical foundation contends that the case before us is distinguishable from Hairston for the reason there are no inconsistencies in the two wills involved as to the devise to it and there was an entirely different dispositive scheme in the wills in Hairston. In this connection it is argued that we recognize the doctrine of dependent relative revocation and that this Court indicated in Crawford v. Crawford, supra, that the doctrine depends on consistency among the instruments involved. It is true that we recognize the doctrine of dependent relative revocation, but the only reported case in which it has been applied is Wilbourn v. Shell, 59 Miss. 205 (1881). The evidence in that case established that the testator had destroyed his holographic will under the mistaken belief that the copy executed by him was a valid will. The Court held since the case involved a destruction of a will, the material inquiry was whether the destruction was animo revocandi and that evidence was admissible to show the circumstances. In this particular case all the circumstances in evidence pointed to the fact that the testator meant the revocation of the one destroyed to depend upon the validity of the copy. This holding was consistent with the construction of the revocation statute announced in Hairston and in no way modified the holding that an express revocation in a will properly attested is conclusive of the intent of the testator to revoke all former wills.
It is argued that we refused to apply the doctrine of Crawford, supra, because of *670 the inconsistency of the two wills involved. In this case the testator executed a will dated January 12, 1946, leaving all his property to his sister. On October 10, 1947, he executed his last will leaving all his property to his nephew. The will did not contain an express revocation clause. The nephew, who was the devisee under the will, was a subscribing witness and could not take under the will. The trial court admitted the last will to probate but held since the devisee in the will could not take the testator died intestate and his property descended to his heirs under the law of descent and distribution. On appeal, the appellant argued that since there was no express clause of revocation in the last will and since it could not take effect because of the incapacity of the devisee, the latter will did not revoke the prior will. In other words, it was contended that the revocation of the first will by the execution of the last will was conditioned on the latter being effective to dispose of his property and under the doctrine of dependent relative revocation, the first will should have been admitted to probate. After discussing several cases, including Hairston, we held that a second will perfect in form, and duly executed, which makes a different disposition of the testator's entire estate from that made in a prior will may be set up as a revocation of the prior will although there is no express clause of revocation in the second. Further that this was true even though the dispositive provisions of the last will failed because of the incapacity of the devisee to take. We further held that since the first will was revoked by the second, it could not be revived by the doctrine of dependent relative revocation. Nothing was said in Crawford that in any way changed the holding of this Court in Hairston, but rather followed what was said in that case.
It was argued in Crawford, as it is argued here that the principle upon which Hairston was decided is unsound and we should adopt the more modern rule. In answer to this argument, we simply stated "but we think that decisions of our own Court are sound, and the rule adopted by our own Court in the cases cited above finds ample support in the more recent decisions of other courts." (225 Miss. at 223, 82 So.2d at 829).
In support of its argument that the law announced in Hairston should be abandoned, Medical foundation cites and relies upon In Re Kaufman's Estate, 25 Cal.2d 854, 155 P.2d 831 (1945), and Linkins v. Protestant Episcopal Cathedral Foundation, 87 U.S.App.D.C. 351, 187 F.2d 357 (1950). The Court held in these cases under facts similar to those before us that the doctrine of dependent relative revocation should be applied to give effect to a devise to a religious society although the wills contained an express revocation clause. It is not indicated in either of these cases whether the court considered the effect of the statute governing the revocation of wills. Since the revocation of a will is governed by statute in this state and the statute has been construed by this Court to mean that an express declaration in writing duly attested revoking a former will is conclusive of the testator's intent, we could not follow these decisions unless we overrule Hairston and other cases insofar as they follow Hairston. The construction that we have placed on the revocation statute has in effect been approved by the legislature. The legislature has met many times since 1855 without any enactment directed toward the revocation statute and thereby has approved the construction of the legislative intent placed thereon. Thus, the decision in Hairston has become in effect, a part of the statute. When a statute is repeatedly re-enacted in essentially the same language and by its retention in all subsequent codes, a decision of this Court interpreting the statute becomes in effect a part of the statute. Therefore, if the statute is to be amended, it should be done by the legislature and not by judicial decision. In Re Estate of Kelly, 193 So.2d 575 (Miss. 1967), *671 and Kittrell v. O'Flynn, 203 Miss. 164, 33 So.2d 628 (1948).
We held in Childress v. State, 188 Miss. 573, 195 So. 583 (1940), that a decision of this Court is binding in its effect and unless mischievous resulting in detriment to the public, it will not be overruled although wrongly decided. We do not think that it can be maintained that Hairston was wrongly decided or that its results are detrimental to the public. In fact, we are of the opinion that the law announced therein is sound. A person has a right to make a will and so long as it is in conformity with the law, he or she may leave his or her property as desired. By the same token such person has the right to revoke a will for any reason he or she may have. Due to the construction we have placed on our revocation statute, the only way that a person may be sure that the revocation of a will is unequivocal and certain is by a declaration in writing either in another will or in a separate writing duly attested revoking the former will. When so revoked such a person is assured that after death no one will be heard to say that he or she did not intend to revoke the former will. We think this is a valuable right and should not be disturbed.
The decisions of this Court on this point, and the law announced therein have been followed and are supported by many decisions of courts of other states. In the case of In Re Pratt's Estate, supra, the facts are very similar to the facts in the case before us, and appellants relied there upon In Re Kaufman's Estate, supra, and Linkins, supra, but the Supreme Court of Florida refused to follow the holding in these cases saying:
The case before us is one wherein the testator, by an unambiguous, complete testamentary instrument, has disposed of all of his property, expressly revoking all prior wills. There is no suggestion of fraud or undue influence. There are no conflicting provisions of testamentary papers necessarily before the court, as in the case of a will and codicils, which might form a basis for the admission of parol evidence for its bearing upon the testamentary intent. We know of no principle of law which would authorize us to look beyond the probated will for testamentary intent in such a case. We do not understand that the "dependent relative revocation" doctrine, useful and salutary as it is in a proper case, carries with it the authority to disregard so well-established a rule as that which forbids us to write a new will for the testator in the face of a clear intent expressed in a proper instrument.
In the much-cited article to which we have alluded, Warren, Dependent Relative Revocation, the author states in part (33 Harv.L.R. at pp. 348-9):
A will cannot be set aside for mistake in either the United States or in England where the testator knew and approved its contents. By the same token a revocation absolute on its face, the words of which the testator knows and approves, will not be set aside because the reasons which induced it are found to be based on false assumptions of fact or law. The testator is dead, and it is too dangerous to inquire what motives induced his action. This was to be done for the construction of the document; it should not be resorted to for alteration of it.
(88 So.2d at 503).
In Ely v. Megie, 219 N.Y. 112, 113 N.E. 800 (1916), the Court in considering the express revocation contained in the codicil of a will states:
My examination of the cases leads me to the conclusion that a distinction exists between an attempted revocation, where the question of the intention of the testator in the cancellation or obliteration of an instrument is a material circumstance to be considered, or where by accident or mistake an earlier instrument is attempted to be cancelled or changed, and revocation by express declaration in writing *672 contained in an instrument executed with all the formalities required by statute, when the revocatory clause is not made dependent upon the validity of a new gift made in the same instrument or limited by language indicating the intention of the testator to preserve in whole or in part bequests embodied in a former codicil or instrument.
In the codicil under consideration the declaration of revocation was complete, and not dependent upon the validity of the bequests made therein which upon the face of the instrument were unambiguous; the three associations, legatees, were inhibited from taking the specific bequests because of the statute above quoted, and the gift to each of them failed, not by reason of any defect in the instrument, but solely in consequence of matter dehors the instrument, and the courts are powerless in such a case to revive or reinstitute the earlier bequests to them contained in the codicil of 1909. The decisions in England and in various jurisdictions in this country are to that effect. Roper v. Radcliffe, 10 Mod.Rep. 231 (1795); Ellis v. Smith, 1 Ves.Jr. Ch. 10 (1754); Tupper v. Tupper, 1 Kay & Johnson, 635 (1855); Neville v. Boddan, 28 Beavan, 554 (1860); Quinn v. Butler, L.R. 6 Eq. Cases, 225 (1868); Price v. Maxwell, 28 Pa. 23; Lutheran Congregation Appeal, 113 Pa. 32, 5 A. 752; Nelson's Estate, 147 Pa. 160, 23 A. 373; Burns v. Travis, 117 Ind. 44, 18 N.E. 45; Hairston v. Hairston, 30 Miss. 276; Vining v. Hall, 40 Miss. 83; James v. Marvin, 3 Conn. 576; Carpenter v. Miller, 3 W. Va. 174, 100 Am.Dec. 744; Colvin v. Warford, 20 Md. 357. (Emphasis added) (219 N.Y. at 139, 140, 113 N.E. at 807).
In the case of In Re Hartman's Estate, 320 Pa. 321, 182 A. 234 (1936), the Court held that a will containing the express clause of revocation in disposing of testatrix's entire estate revoked a prior will containing certain charitable bequests, and the bequests of the same character in a later will having been made within the time limited by statute failed, despite contention that it was not the intent of the testatrix to cause such a revocation but only to increase the charitable gifts.
In the case of In Re Eberhardt's Estate, 1 Wis.2d 439, 85 N.W.2d 483 (1957), the testator executed a will in 1948 and later executed a will in 1953 which contained a revocation clause. Testator later destroyed the 1953 will in the presence of an attorney and made an oral announcement that he wanted to reaffirm his 1948 will. The court held that this revocation clause in the second will effectively revoked the prior will as soon as it was executed by the testator and that the principle of dependent relative revocation could never be employed for the purpose of reviving a former will which had been validly revoked. The court also held that a will which had been revoked by a revocation clause in a subsequently executed will cannot thereafter be revived and reinstated by a testator except by a written instrument executed in a manner required by statute for wills. See also Newman v. Newman, 199 N.E.2d 904 (Ohio Prob. 1964); Cash v. Cash, 212 Ga. 416, 93 S.E.2d 346 (1956); and Briscoe v. Allison, 200 Tenn. 115, 290 S.W.2d 864 (1956).
In reaching a decision in this case we have not overlooked the argument that the testator had a large estate and had made ample provisions for his wife and children. However, we are of the opinion that this factor is not material. If the case could be decided on this basis, we would have no difficulty in holding the bequest to appellee to be valid. This case must be decided on the basis of the law as reflected by our statutes and the decisions of this Court. Even though the results in this particular case may seem hard, we have no legitimate power in order to prevent hard results in an occasional case to set aside well-settled rules of law based upon statutory construction and sound legal principles. Austin-Wetsern Road Machinery Co. v. Webster Co., 170 Miss. 601, 154 So. 723 (1934).
*673 For the reasons stated, we hold that the bequest to appellee in the January 20, 1971, will is void because the will was executed less than ninety days before the death of the testator. We also hold that the chancellor was manifestly in error in applying the doctrine of dependent relative revocation so as to admit to probate Item III of the September 11, 1970, will which had been expressly revoked. The decree appealed from will be affirmed insofar as it admitted to probate in solemn form the January 20, 1971, will but will be reversed insofar as admitting to probate in solemn form Item III of the September 11, 1970, will and judgment will be entered here in favor of appellants adjudicating the bequest of Alton Ochsner Medical Foundation to be void and of no effect. The cause will be remanded for further proceedings consistent with this opinion.
Affirmed in part, reversed in part and remanded.
GILLESPIE, C.J., RODGERS, P.J., and SMITH and BROOM, JJ., concur.
SUGG, PATTERSON, ROBERTSON, and WALKER, JJ., dissent.
SUGG, Justice (dissenting):
I respectfully dissent because the testator in his last will dated January 20, 1971, repeated the bequest to appellee contained in his will of September 11, 1970. In my opinion, a testator who repeats his purpose intends to confirm rather than revoke it, and does not intend to have his new will operate as a revocation of a consistent devise.
The 1971 will of the testator made only minor changes in the 1970 will, these being as follows:
Item One. The last will devised unto the widow all household goods owned by testator whereas the 1970 will limited the devise of household goods to those located in the home of the parties. It was not shown in the proof that there were any household goods located outside the home of the parties that would have passed under this changed disposition.
Item Two. In subparagraph (c) L.O. Crosby, III was stricken as a remainderman in the 1971 will, while he was included in the 1970 will.
Item Three. The devise to appellee, Ochsner, was the same in both wills.
Item Four. The 1971 will added L.O. Crosby, Jr. as a co-executor in addition to the two executors named in the 1970 will.
The majority opinion relies on the case of Hairston v. Hairston, 30 Miss. 276 (1855), as authority to preclude inquiry into the question of the intention of the testator when the last will of the testator includes a clause revoking all former wills.
In Hairston, supra, the Court stated:
[T]he act of revocation is unequivocal; and not being equivocal, it is incompetent to seek for the intention outside of the instrument itself ...
(30 Miss. at 305).
The facts in Hairston are set forth in the majority opinion and it is apparent that Hairston was dealing with inconsistent provisions of two wills and there was no basis on which it could be held that the revocation of the will of 1841 was equivocal.
Hairston recognized the doctrine of dependent relative revocation and this Court applied the doctrine in Wilbourn v. Shell, 59 Miss. 205 (1881) to permit the probate of a will which had been destroyed by the testator.
In Wilbourn, testator had a holographic will and carried it to the witness, Hobgood, for the purpose of having the witness make a legible and correctly spelled copy and immediately attempted to execute the instrument as his will. After the will was written by Hobgood it was signed by testator and attested by two witnesses instead *674 of three as required by law then in existence. The testator destroyed his holographic will after the last will was signed. The will was ineffective because of the want of attestation, but the Court held that the revocation of the holographic will was conditional and not absolute; that the original will was, in law, still the existing will of the testator, and was entitled to probate.
Wilbourn cites as authority Hairston v. Hairston, 30 Miss. 276 (1855); James v. Shrimpton, L.R. 1 P.D. 431; Barksdale v. Barksdale, 12 Leigh, Va., 535; Onions v. Tyrer, 1 P.Wms. 343; 1 Jarman on Wills, 294.
On September 11, 1970, testator expressed his intention for appellee to share in his estate. This intention was reaffirmed in his last will of January 20, 1971. After the execution of the last will the preceding will was destroyed at the direction of the testator. A reasonable construction of the intent of testator would be that since both wills contained the same devise to appellee, the clause of the last will revoking all former wills and testaments was not unequivocal as to the bequest to appellee since the bequest to appellee was contained in the same instrument which revoked all former wills.
When the 1971 will was signed by testator and duly attested, he reaffirmed the bequest to appellee by the same act that revoked his prior wills, thus the bequest to appellee was in existence without interruption from September 11, 1970, the date of the first will. The revocation of this bequest was therefore not unequivocal. As expressed in Wilbourn, supra, it was conditional and not absolute.
The testator, Crosby, was advised before he executed the 1970 will that he would have to live 90 days in order for the bequest to appellee to become effective, but when he executed his 1971 will, he was not advised that he would have to live 90 days thereafter for the same bequest to become effective. He was not advised that he might, by codicil, change the 1970 will, and he was not advised that he could make the revocation clause inapplicable to the bequest to appellee.
In view of the fact that the last will of testator duplicated the purpose of the preceding will with reference to making appellee a beneficiary, it naturally follows that repetition of the same dispositive plan in the last will was clearly equivocal; therefore, it was competent to seek the intention of the testator outside the instrument itself. The court properly admitted evidence as to the execution of the will of 1970 as an aid in determining the intention of testator as to the effect of the revocatory clause of the 1971 will.
In Linkins v. Protestant Episcopal Cathedral Foundation, 87 U.S.App.D.C. 351, 187 F.2d 357 (1950), the doctrine of dependent relative revocation was applied although the last will contained an express revocation clause. Judge Edgerton, in a specially concurring opinion stated:
I concur in Judge Prettyman's opinion, though I think it would be possible to base affirmance on another theory. D.C.Code (1940) § 19-202, which we quote in footnote 1, provides that no bequest to a religious sect shall be valid "unless the same shall be made at least one calendar month before the death of the testator." In my opinion it would not be unreasonable to hold that this restricts only the making of wholly or partly new bequests, not the mere restatement of existing ones, and that the residuary clause in the will of July 14 is therefore valid. (Emphasis added.) (187 F.2d at 361.)
In the California case of In re Kaufman's Estate, 25 Cal.2d 854, 155 P.2d 831 (Cal. 1945), testator executed a will dated March 18, 1940, in New York. He moved to California and executed a new will on April 30, 1941, containing the clause: "I, Samuel B. Kaufman, do hereby make and declare this to be my Last Will and Testament, revoking all former wills." Testator died on May 2, 1941, and it was explained to him by the attorney who drew the will *675 that he would have to live 30 days in order to make the will effective and he was advised to draw a codicil to the will because if he died within 30 days the will would not be effective. The testator stated: "No, I want to make a new will. I don't want a codicil." Thereupon the attorney drew the will of 1941. The California Court applied the doctrine of dependent relative revocation, and, speaking through Justice Traynor, stated:
The doctrine is clearly applicable to the facts of the present case. The record makes clear the intention of the testator. He did not change his testamentary purpose but only minor details in its execution. The five cash legacies with residue to appellant church constituted the whole of his unaltered testamentary purpose. Since the second will was virtually identical with the first in the disposition of the testator's estate, it is clear that the first will was revoked only because the second duplicated its purpose and that the testator would have preferred the first will to intestacy as to a substantial part of his estate. When a testator repeats the same dispositive plan in a new will, revocation of the old one by the new is deemed inseparably related to and dependent upon the legal effectiveness of the new. Estate of Thompson, 185 Cal. 763, 775, 776, 198 P. 795; Blackford v. Anderson, 226 Iowa 1138, 1162, 1164, 286 N.W. 735; Charleston Library Society v. Citizens & Southern Nat. Bank, 200 S.C. 96, 125, 126, 20 S.E.2d 623; Flanders v. White, 142 Or. 375, 378, 386, 18 P.2d 823; Stewart v. Johnson, 142 Fla. 425, 430-432, 194 So. 869; Stickney v. Hammond, 138 Mass. 116, 121; Wilbourn v. Shell, 59 Miss. 205, 208, 209, 42 Am.Rep. 363. If the new will fails to give effect to the twice declared purpose of the testator, its revocatory clause falls, for a testator who repeats his purpose intends to confirm and not revoke it, and does not intend to have the new will operate as a revocation independently of its operation as a will. Blackford v. Anderson, 226 Iowa 1138, 1158, 1159, 286 N.W. 735; Rudy v. Ulrich, 69 Pa. 177, 182, 183, 8 Am.Rep. 238; Stewart v. Johnson, 142 Fla. 425, 430, 431, 194 So. 869; Wilbourn v. Shell, 59 Miss. 205, 208, 209, 42 Am.Rep. 363; Flanders v. White, 142 Or. 375, 383, 386, 18 P.2d 823. (25 Cal.2d at 860, 155 P.2d at 834). (Emphasis added).
The trial court's finding that the testator intended to revoke the 1940 will unconditionally is not supported by the evidence. All the testimony including the testimony of Trust Officer Seaman and of Attorney Fogel and his secretary, shows that the testator wanted no change in his will except for the naming of a California executor. Any conclusion as to the testator's intention must be considered in the light of his knowledge at the time he executed the will. Estate of Pearsons, 99 Cal. 30, 33 P. 751; Estate of Ladd, 94 Cal. 670, 30 P. 99; Estate of Bourn, 25 Cal. App.2d 590, 78 P.2d 193. The testator was not advised that he might provide in his 1941 will that the revocation of the charitable bequest by the revocation clause in the 1941 will was dependent upon the legal effectiveness of the 1941 will to carry out his bequest, nor was he advised that the same result would follow under the doctrine of dependent relative revocation. In the light of his twice-declared intention to leave his residuary estate to appellant church, it cannot be held that he chose not to make the revocation conditional or not to have the doctrine of dependent relative revocation apply. It does not appear why the testator chose a new will rather than a codicil. Certainly it cannot reasonably be held that he made that choice in order to invalidate the charitable bequest if he did not live for thirty days. Nothing that he said or did indicated that he wanted the gift to fail if he did not live for thirty days. It does not follow from the fact that he was advised that the new will would not be effective unless he lived for thirty *676 days that he intended that the charitable bequest should fail if he died within that period. To so hold would be to read into the charitable bequest an intentional condition precedent that the testator should live for more than thirty days. There is no evidence that the testator had any such intention.

The judgment is reversed with directions to admit the 1940 will to probate with the 1941 will and codicil. (25 Cal.2d at 860, 155 P.2d at 834). (Emphasis added).
In 95 C.J.S. Wills § 267 the subject of conditional or dependent relative revocation is thoroughly discussed and the text writer makes the following statements:
The intention to revoke required for an effective revocation of a will must be or have become unconditional. In other words, while the intention to revoke may be conditional, if the revocation is subject to a condition which is not fulfilled the revocation does not take effect. This rule is known as the doctrine of dependent relative revocation, and while it is not recognized in some jurisdictions, is usually applied where the testator cancels or destroys a will, or executes an instrument intended to revoke a will, with a present intention to make a new testamentary disposition as a substitute for the old, and the new disposition is not made or, if made, fails of effect for some reason. It has also been applied where the will allegedly revoking the will in issue could not be found or established as a lost will. (Id. at 34, 35.)
......

Basis of doctrine. While the doctrine is based on the assumption that had the testator known that the instrument containing the revocation was not effective as a will, he would not have declared the revocation, but would prefer his previous will to intestacy, it is basically an application of the rule that the intention of the testator governs. Thus, while the doctrine of dependent relative revocation is a rule of presumed intention, rather than a substantive rule of law, based on the theory that all revocatory acts are essentially equivocal, the doctrine is subordinate to the rule which makes the intention of the testator paramount, so that its application is limited to cases in which it can operate in furtherance of the intention of the testator. In other words, the presumption of intention is a rebuttable one, and will not apply where there is some actual evidence on the question of the testator's intention; and inquiry should be made as to what the testator would have desired had he been informed of the true situation. (Id. at 35-36.) (Emphasis added.)

Rules governing application of doctrine. The doctrine should be applied with caution; and, it has been said, the tendency of modern cases is clearly to narrow the scope of its application. Thus, the mere fact that the testator intended to make a new will, or made one which failed of effect, will not alone, in every case, prevent a cancellation or obliteration of a will from operating as a revocation; and the doctrine can only apply where there is a clear intent of the testator that the revocation of the old will is made conditional on the validity of the new one. Accordingly, the doctrine is not applicable where the act of destruction is not referable, wholly and solely, to the intention of setting up some other testamentary paper, as where it appears that the intention of the testator was to revoke totally and absolutely, or where the testator at the time of the destruction of his will merely intends at some indefinite future time to make a new will.
The doctrine is particularly applicable where the testator, in the execution of the new will to supersede the old one, did not change the testamentary purpose but only minor details, and essentially repeats the same dispositive plans, so that it is clear that the first will was revoked only because the second duplicated its *677 purpose, and that the testator would have preferred the first will to intestacy. Conversely, the doctrine has been held inapplicable in a case in which the new will was materially different from the old one. (Id. at 36-38.) (Emphasis added.)
The testator was not informed of the true situation of the effect the revocatory clause of his last will thus, the doctrine is particularly applicable in this case because of that fact. An additional reason is that testator changed his testamentary purpose only as to minor details and repeated the dispositive plan to appellee.
I recognize that there is respectable authority to the contrary, but it appears that the cases which apply the doctrine of dependent relative revocation have a sounder basis in reason.
The chancellor stated in his opinion the following:
Based on the authorities hereinafter cited and discussed and for the reasons hereinafter stated, the Court finds that while the doctrine of Dependent Relative Revocation must be applied with caution, that nevertheless the very fact that such a doctrine exists clearly indicates that it should be applied in proper cases, which blends with the principle of upholding charitable bequests where validly possible and also to so construe the will as to give effect to testator's intention and also to uphold the testacy rather than intestacy of the decedent where he has twice made the same bequest to the same beneficiary.
This State recognized the doctrine of dependent relative revocation in Hairston, supra, applied it in Wilbourn, supra, and in my opinion, this is a proper case for the application of the doctrine.
While not directly applicable to the case at bar, it is noted that this Court, in construing Section 270 of the Mississippi Constitution of 1890, has adopted a liberal construction toward upholding the validity of bequests controlled thereby. This Court had occasion in Mississippi School for Blind v. Armstrong, 216 Miss. 348, 62 So.2d 369 (1953), to construe Section 270 of the Mississippi Constitution which provides that if a person leaving a spouse or child, or descendants of child, bequeath or devise more than one-third of his estate to any charitable, religious, educational or civil institution, to the exclusion of such spouse or child, or descendants of child, the will containing such bequest must be executed at least 90 days before the death of the testator, or such bequest shall be void.
In Mississippi School for Blind, supra, the testatrix died on July 20, 1951, leaving a last will and testament executed December 1, 1950, providing for payment of taxes, debts, expenses of last illness and funeral, and expenses of administering her estate, directing the erection of a modest monument, a bequest of $1,000 to a friend and then provided in Item 6 as follows:
"After fully paying all the foregoing items, all the balance of my property of which I may die seized and possessed, both real and personal, or of whatever nature, I devise and bequeath to the Mississippi School for the Blind, located near Jackson, Mississippi, to be used by that institution for the education and benefit of the blind children in attendance at that school." ... (216 Miss. at 351; 62 So.2d at 369.)
The will was admitted to probate in common form and the son and sole heir at law of the testatrix brought suit to have the quoted provision of the will declared void as being in violation of Section 270 of the Mississippi Constitution. The trial court held the bequest was void in its entirety and adjudged that the Mississippi School for Blind take nothing by the will, giving the entire residue to the son.
On appeal, this Court stated:
We must bear in mind two principles which are well established in our jurisprudence governing the construction of *678 wills. One is that the prime inquiry is the intention of the testatrix and when this has been ascertained all minor, subordinate and technical rules of construction must yield to this paramount intent. In re Raworth's Estate, 211 Miss. 780, 52 So.2d 661; Lanham v. Howell, 210 Miss. 383, 49 So.2d 701, certiorari denied 342 U.S. 834, 72 S.Ct. 57, 96 L.Ed. 631; Rice v. McMullen, 207 Miss. 706, 43 So.2d 195; Yeates v. Box, 198 Miss. 602, 22 So.2d 411. The other rule is that in the absence of a clear intention to the contrary, that construction should be adopted which will result in a just and reasonable disposition of the property. In re Raworth's Estate, supra. When we consider Mrs. McConnico's will in the light of these rules it seems crystal clear to us that it was her intention that the Mississippi School for the Blind be the outstanding object of her bounty and that a just and reasonable construction would be that, in accordance with the limitation laid down in Section 270 of our Constitution, the bequest to that institution should be limited to one-third of her estate. (216 Miss. at 355, 62 So.2d at 371.)
This Court held that under the will in question, Mississippi School for the Blind was entitled to take one-third of the estate. The Court did not declare the entire bequest void as a strict construction of the constitutional provision would have required, but held the bequest valid up to the one-third permitted by the Constitution and stated: "This impresses us as being a fair, reasonable and just conclusion." (216 Miss. at 357, 62 So.2d at 372.)
In summary, I do not deem it necessary to overrule Hairston, supra, because as previously discussed, the revocation of the bequest to appellee was not unequivocal, but I would overrule it rather than defeat the expressed intention of the testator in this case to leave a portion of his estate to appellee. The record reflects the generosity of testator to his family during his lifetime, and the provision for his widow and others in his will; therefore, I would not defeat his intention, twice expressed, to make appellee the object of his bounty to further the laudable purposes for which it exists, viz., to alleviate the physical suffering of mankind.
PATTERSON, ROBERTSON and WALKER, JJ., join in this dissent.