SOUTHWICK, P.J.,
dissenting:
¶ 11. We must identify the debt secured by the lien that is created when a condominium association files a notice of assessment. The majority holds that it is only the amount of delinquent monthly payments as of the time of the filing. However, in my view the majority has not properly analyzed the meaning of “assessment” under the statute. The assessment is the entire amount due for the year. The statute explicitly provides that the hen created by the filed notice applies to the “assessment.” Therefore, the filing of notice of delinquency creates a lien for any part of the annual assessment not yet paid. Respectfully, I believe the majority confuses the installment payments — only some of which may have come due by the time of the notice — with the annual assessment itself.
¶ 12. The trial judge awarded $1681, the exact amount owing in November 1995 when the Tally Arms Association filed notice of assessment. He found that the installment due in December and all subsequent ones were beyond the hen’s coverage. The majority affirms that interpretation of the reach of the lien. I find that the lien extended one month further than this. Though the difference is small in this case, that is only because the notice of hen was filed near year’s end. I would modify the judgment entered below to add the December 1995 installment of $197 to the lien, for a total hen of $1878. I would then affirm the judgment as modified.
¶ 13. Both the majority and this opinion are unable to cite much precedential support for the conflicting interpretations that we give to the condominium statute. The statute was adopted in 1964.1964 Miss. Laws, ch. 270. It was part of the first generation of condominium statutes passed almost immediately after the Federal Housing Administration was authorized in 1961 to insure mortgages on condominium units. Lawrence E. Alison, Jr., “The Mississippi Condominium Act: An Analysis of Potential Problems,” 44 Miss. L.J. 261, 262-63 cmt.(1973).
¶ 14. Had the enactment been based on a uniform or model act with commentary, our analysis could have been informed by those comments. The only discovered possibility was a model act prepared by the FHA; the Mississippi legislature did not use it.[1] Instead, the Mississippi act is a close copy of the California condominium enactment of 1963. 1963 Cal. Laws ch. 860. When there is evidence that the legislature consciously adopted another state’s laws, then under the “borrowed statute” doctrine the legislature might also be found to have adopted the sister state’s prior interpretations. Crosby v. Alton Ochsner Med. Found., 276 So.2d 661, 664-65 (Miss.1973). The 1963 California act was too recent in 1964 for precedential baggage. Aso, there is no discovered record that the Mississippi legislature was aware that the language had already been utilized in California. Indeed, a different and common source for both states may have existed.[2]
*32 ¶ 15. The foundation for understanding our condominium lien statute is its first sentence:
A reasonable assessment upon any condominium made in accordance with a recorded declaration of restrictions permitted by Section 89-9-17 shall be a debt of the owner thereof at the time the assessment is made.
Miss.Code Ann. § 89-9-21 (1972). The question is the meaning of the word “assessment.” The statute refers to the assessment being a “debt of the owner [of a unit] at the time the assessment is made.” As will be explained, this assessment is based on a calculation of common expenses, which then may be satisfied with periodic payments. A new assessment is not “made” after each payment.
¶ 16. Help in determining the correct interpretation of “assessment” may be found in the Condominium Act’s section on making assessments. Among the powers of a management body that may be set out in a declaration of restrictions on a condominium project are these:
(5)(i) For reasonable assessments to meet authorized expenditures of any management body, and for a reasonable method of notice and levy thereof, each condominium to be assessed separately for its share of such expenses in proportion, unless otherwise provided, to the owner’s fractional interest in any common area;
(ii) For the subordination of the liens securing such assessments to other liens either generally or specifically described.
Miss.Code Ann. § 89-9-17 (1972). There are several important phrases in this assessment authorization. Perhaps the most significant is “reasonable method of notice and levy” of the assessment. “Levy” has a variety of meanings, but I find the most apt are to “charge” and to “collect,” as to levy a tax. Black’s Law Dictionary 907 (6th ed.1990). Thus, the condominium association is statutorily authorized to decide the method of giving notice and collecting the assessment.
¶ 17. Also of importance is that the section which details the creating of the lien does not require that an assessment be delinquent before notice may be filed. It provides that the “amount of any such assessment ... shall be and become a lien upon the condominium” once notice of that assessment is sent to the chancery clerk’s office. Miss.Code Ann. § 89-9-21 (1972). The condominium lien book may be utilized much like an ad valorem tax record, indicating all the property and the amount of the charges, and then noting when the assessments are paid. Id. An association would be able to file notice of all unit owners’ individual total assessments at the beginning of each assessment year and then release the respective liens upon payments in full. Though the lien expires after one year, the right to renew for another year suggests the concept that associations would renew only for those units that did not pay in full at year’s end, though notice of all assessments would be filed at the beginning of the year. Even if an association just files after a delinquency occurs, as Tally Arms did here, this broader picture reveals what is gained by the filing. Tally Arms did not then state the full amount of the annual assessment and therefore the literal language of the condominium lien statute was not followed. No issue of that has been made. The notice did claim all future amounts.
¶ 18. I now turn to the declaration of restrictions for Tally Arms to determine what that entity decided about assess *33 ments. Paragraph XI of the declaration concerns assessments. There is an annual determination of costs that are then allocated to the various units and paid monthly. The assessment is a debt when made but timely installment payments prevent a delinquency from occurring. The total amount is the “assessment.” These are the relevant sections:
4. Assessments for common expenses shall be made for the calendar year annually in advance on or before the second Monday in December preceding for which the assessments are made and at such other and additional times as in the judgment of the Board of Governors [may be required.] Such annual assessments shall be due and payable in twelve (12) equal consecutive monthly payments on the first day of each month....
10. Lien for assessment. The unpaid portion of an assessment which is due shall be secured by a lien upon (a) The Dwelling unit and all appurtenances thereto when a notice claiming the lien has been recorded [in the chancery clerk’s office.] The Association, however, shall not, however, record such claim of lien until the assessment is unpaid for not less than twenty (20) days after it is due. Such a claim of lien shall also secure all assessments which come due thereafter, until the claim of lien is satisfied, except that such lien shall be subordinate to prior bona fide liens of record.
¶ 19. In summary, paragraph 4 labels the total annual charge against each condominium unit the “assessment” of that owner. A lien secures the “unpaid portion of an assessment,” according to paragraph 10. True, that paragraph also uses the shorthand of “assessment” for the unpaid portion of the total. Such lack of precision does not alter statutory rights, however.
¶ 20. I find Tally Arms’s declaration to be consistent with the statute. Section 89-9-21 makes the total assessment “a debt of the owner thereof at the time the assessment is made.” The next statutory sentence then provides that the “amount of any such assessment” and certain other charges become a lien on the condominium when “a notice of assessment” is filed for record in the chancery clerk’s office. The natural interpretation of that language is that the lien secures the entire annual assessment, since it became a debt of the condominium owner once the assessment was made. All of the assessment may not yet be due, but all is secured once notice is filed.
¶ 21. Therefore, I find little interpretive doubt that the statute permitted Tally Arms to create a lien for the entirety of the 1995 assessment. Notice was filed in November 1995 and the entire 1995 assessment was covered by the lien. The more difficult question is whether the next year’s assessment, which according to the declaration of restrictions quoted above should have been made in December 1995 to become effective January 1, 1996, was also secured and had priority over a deed of trust executed in 1996.
¶ 22. To resolve this next statutory issue, I start with what is evident. That next year’s assessment was a debt as of January 1, 1996. Miss.Code Ann. § 89-9-21 (1972) (“reasonable assessment ... shall be a debt of the owner thereof at the time the assessment is made”). No lien is created merely because of the debt; there must be a filing. The statute makes continuing reference to the single “assessment,” such as the requirement that a notice of release of lien must be filed if the management body received “payment of said assessment....”
¶ 23. The 1996 allocation of common expenses was a new assessment. I find *34 that the statute itself does not create a lien covering future assessments merely by the notice being given of a delinquency on a previous assessment. It is true that the statute permits a renewal of the hen— whatever it covers — within one year after its initial filing. Presumably, a large percentage of the time when a condominium owner stops monthly payments on an assessment, that default will continue into the next assessment year. The legislature may have contemplated a continuing delinquency. Even if it did, the statute does not create a hen for that later year’s assessment from the filing of • the earlier notice. However, as already explained, the Association could have filed a new hen notice at the beginning of the next assessment year to secure the new allocation of common expenses on all units, a hen that would take its priority from the date of its filing.
¶ 24. This does not end the inquiry, however. Even if the statute does not by its own terms create a hen to secure a later assessment, may the condominium governing body effectively create that hen when the notice that it files specifically refers to later assessments? Here, the Tally Arms Association gave notice of the delinquency that existed as of November 1995, and then stated that “[successive unpaid monthly assessments shah accrue to the total amount of this lien.” The association used terminology that each monthly payment was an “assessment,” but insofar as what was statutorily authorized, the entire annual amount of allocated costs was secured by the lien. I find that the association was attempting to have the hen cover all future delinquencies, both on the current and on future assessments. Constructive notice of the association’s claim existed through the filing. We have to decide whether the notice’s constructive reach exceeded the association’s legal grasp.
¶ 25. Though the reference to “assessment” in section 89-9-21 does not include the new allocation of costs for 1996, we need to consider that the statute also allows the hen to include “other charges.” However, the plain language of the statute limits the other amounts to those which are derived from the assessment itself: the hen is in the “amount of any such assessment plus any other charges thereon, such as interest, costs, attorneys’ fees, and penalties,” as provided in the declaration of restrictions for the condominium association. Miss.Code Ann. § 89-9-21 (1972) (emphasis added). The assessment for the next year would not be a charge on the previous year’s assessment.
¶ 26. Having concluded that there is no statutory authorization for the language in Tally Arms’s notice that purported to extend the hen to ah later assessments, I now turn to whether there is a prohibition. There is no explicit language in the condominium statutes barring such coverage. Does the statute or anything else prohibit giving effect to a notice that by its language seeks to include future dehnquent assessments within the hen? In other words, even if the statute does not make such a hen automatic, does it make notice of such a hen ineffective?
¶ 27. There is no general statute applicable to all hens. There are numerous hen statutes that separately address specific categories of property and relationships with it. E.g., Miss.Code Ann. § 85-7-1 (Rev.1999 & Supp.2002). Other statutes discuss the priorities of security interests in real property. E.g., Miss.Code Ann. § 89-1-43 (Rev.1999) (mortgages and trust estates).
¶ 28. Finding no relevant statute, I turn to judicial precedents. One older case stated that “[a]h hens are created by law or by contract of the parties.” Hollis & *35 Ray v. Isbell, 124 Miss. 799, 87 So. 273, 274 (1921), quoting 13 R.C.L. 133, § 55. In our case, an express provision of the declaration of restrictions provided that recorded notice “of lien shall also secure all assessments which come due thereafter, until the claim of lien is satisfied, except that such lien shall be subordinate to prior bona fide liens of record.” Tally Arms Declaration of Restrictions, § XI, 10(a). This declaration, which was part of the contract governing the relationship with condominium owners, created a contractual lien broader than the statutory one. When parties create contractual lien rights that extend beyond what is authorized by statute, those rights may be enforceable. Pincus v. Collins, 198 Miss. 283, 287-88, 22 So.2d 361, 362 (1945) (lien broader than statutory mechanic’s lien was enforceable), recognized as current law in Lindsey v. Lindsey, 612 So.2d 376, 379 (Miss.1992).
¶ 29. What Pincus does not address is the priority of a contractual, non-statutory lien. It is one thing to state that the Association may have a lien against the condominium property for future annual assessments. It is quite another to state that the extended lien trumps a subsequently filed deed of trust. By statute, certain kinds of instruments have priority based on the date of their filing: “Every conveyance, covenant, agreement, bond, mortgage, and deed of trust shall take effect, as to all creditors and subsequent purchasers” who do not have notice, as of the date of filing. Miss.Code Ann. § 89-5-5 (Rev.1999). Contracts regarding land also may be filed and thereafter are notice. Miss.Code Ann. § 89-5-7 (Rev.1999). The notice of condominium lien does not clearly fit within either of these two statutes.
¶ 30. More importantly than these other lien statutes, the condominium lien statute itself reflects a legislative limit on the priority of the condominium assessment lien. The legislature determined that the described condominium hen should have no force beyond two years from its initial filing, and the second year required that renewal notice be filed. Miss.Code Ann. § 89-9-21 (1972). A contractual broadening of these rights is inconsistent with the statutory limits on the lien.
¶ 31. In conclusion, I find that Tally Arms had priority for the entire amount of the 1995 assessment, both the payments due before the filing of the lien notice and the remaining small portion of that year’s unpaid assessment. I would add the December installment to the judgment.
¶ 32. However, I agree that to have obtained priority for the 1996 assessment over the competing and subsequently filed deed of trust, Tally Arms would have needed to file a new notice of assessment prior to the filing of the trust deed. It could have made that filing for all units at the beginning of the new assessment year. That entire 1996 assessment would then have had priority over any subsequently filed liens such as the Whitney Bank deed of trust. That did not occur.
McMILLIN, C.J., LEE AND IRVING, JJ., JOIN THIS SEPARATE WRITTEN OPINION.

. Cf. 1964 Miss. Laws ch. 270, with "Model Statute for Creation of Apartment Ownership,” issued as FHA Form 3285, reprinted in Penney & Broude, Land Financing: Cases & Materials 533-543 (2d ed.1977).

. The first seven states adopted condominium statutes in 1961 and 1962. William K. Kerr, '‘Condominium — Statutory Implementation, ’ ’ XXXVIII St. John’s L.R. 1, 5 (1963). An examination of each act reveals that none of those, nor the F.H.A. model act, had language such as was used by California in 1963. Condominium acts were passed in 31 states in 1963. Id. I examined some but not all of *32 those to determine if others also used the 1963 California language.